**John RODGERS**

**v.**

**SUN REFINING AND MARKETING COMPANY.**

**Civ. A. No. 84–2429.**

United States District Court, E.D. Pennsylvania.

Jan. 23, 1985.

John R. O'Donnell, Philadelphia, Pa., for plaintiff.

William J. Taylor, Thomas A. Masterson, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND FINAL ORDER

BECHTLE, District Judge.

John Rodgers, plaintiff, instituted these proceedings under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.*, on May 18, 1984, seeking injunctive relief to prevent the defendant, Sun Refining and Marketing Company ("Sun") from terminating his dealer franchise contract. The termination was sought because of plaintiff's repeated practice of running out of product due to faulty re-ordering practices. The subject of the franchise relationship is a Sunoco gasoline service station located at Swedesford and Morehall Roads, Malvern, Pennsylvania, in the Eastern District of Pennsylvania.[1] The court held hearings on the prayer for in-junctive relief on November 2, 5, 13, and 14 and December 3, 1984. On November 14, 1984, following completion of testimony and argument, the court rendered a bench ruling denying the relief plaintiff sought. However, since the franchise contract entered into on November 10, 1981, had run its three year term during the court proceedings, the court's Order denying plaintiff relief also allowed plaintiff, until November 28, 1984, to submit to Sun a satisfactory proposal respecting a means to remedy the precise dispute at issue, in order to allow the plaintiff to seek renewal of the franchise relationship for an additional term, which he asked for.[2] The plaintiff has complied with the conditional Order by submitting to Sun a written plan for a renewal period that plaintiff asserts will satisfy the complaints of Sun, which assertion the court concludes is justified.[3] Sun has refused to accept, reject, or even consider the proposal on the merits, relying entirely upon its belief that the claimed and proven failure to comply with the franchise requirements in the past (during the previous but now expired franchise term) justifies, without more, a refusal by Sun to renew the franchise for an additional period.[4] What must be understood here is that the court did not rule that the plaintiff's failures resulted in a termination of the franchise contract because that question was rendered moot by reason of the expiration of the contract term.

The legislative history of the statute governing this case, S.Rep. No. 95-731, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S. Code Cong. & Ad.News 873, 874, fairly read, tells us that the provisions pertinent to this proceeding establish protection for franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises. It is intended to preclude the termination of a franchise contract or the refusal to renew a franchise at the expiration of a franchise term unless the termination or

---

1. The parties also operate under an accompanying lease arrangement for the premises.

2. See N.T. 30 (Hearing of November 14, 1982).

3. See N.T. 1–8 (Hearing of December 3, 1984) and Exhibit "C" to Plaintiff's Motion to Amend His Complaint, filed December 12, 1984.

4. See N.T. 8–10 (Hearing of December 3, 1984).

nonrenewal is based on a ground provided for in the legislation and is executed in accordance with certain notice provisions.

At the heart of the dispute between the plaintiff and Sun is a relatively finite factual circumstance as follows. Under the arrangement between the plaintiff and Sun, the plaintiff was to order fuel forty-eight hours in advance from the local terminal. Thereafter, the local terminal had that notice period, plus the twelve hour shift following the notice period to deliver the fuel. The plaintiff has three 6,000 gallon underground tanks at the station. One of these tanks is for leaded fuel and the other two tanks hold 6,000 gallons of "economy" unleaded fuel and 6,000 gallons of "ultra" unleaded fuel respectively.[5] During the original franchise term that has now expired, plaintiff, apparently experiencing financial difficulties, would wait until the levels of his underground tanks would drop to levels at or below 1500 gallons for the unleaded fuel and 800 gallons or below with respect to leaded fuel. This waiting was necessary because, presumably, plaintiff needed the receipts from the sales of fuel sold to these levels in order to have enough money to pay the driver the price of the 8500 gallons of delivered fuel that had been ordered. This was plainly too close a tolerance with the consequence that the plaintiff would run out of fuel before the delivery arrived. The evidence at the trial demonstrated that on numerous occasions, clearly in excess of twenty and probably more, plaintiff ran out of various types of these fuels and had to post "out of gas" signs on his fuel tanks. Indeed, some fuel levels measured as low as 514 gallons (P–14), 806 gallons (P–5), 506 gallons and 320 gallons (P–8). In one instance the gallonage were as low as 79 gallons (P–9). Plaintiff's need to post "out of gas" signs

on his tanks was found by the court to be a proper concern of Sun. Indeed, there is correspondence prior to the time the parties entered into the franchise contract on November 10, 1981, that suggests Sun had this concern prior to entering into the contract;[6] however, no particular gallonage requirement or level requirement for reordering was ever added into the franchise contract to protect Sun during the contract period.[7]

Sun sought termination based upon these episodes of running out of product. The defendant has no other complaints against this franchisee.[8] A fact of major significance concerning plaintiff's proposal to cure fuel outages is Sun's insistence to deliver only a full truck load of fuel (8500 gallons) and the accompanying insistence that the plaintiff accept the entire load. Sun, for economic reasons important only to itself, will not deliver *less than* 8500 gallons of fuel. With these facts facing this plaintiff seeking renewal and in response to the court's requirement to submit a proposal for a contract provision to remedy the circumstance of running out of product, plaintiff filed with the court his proposal on December 3, 1984. Plaintiff is willing to be contractually bound to substantially raise the levels of his "ultra" and "leaded" fuel storage tanks to the highest levels that will still allow enough room in the tanks to comply with the defendant's insistence that he accept 8500 gallons and no less.[9] This was a dramatic change from the plaintiff's previous ordering practice that resulted in outages. Plaintiff, under the new proposal, would maintain 3,000 gallons in each of the two tanks that contain unleaded product and 2,000 gallons in the leaded tank, as opposed to the previous

5. This arrangement allows the mixture of the economy and the ultra brands to provide a variety of grades from the vantage point of octane content. The ultra brand, during some of the relevant periods of this case, was also referred to as "super," but they are, for our purposes, one and the same.

6. See D–1; dated September 4, 1981.

7. See D–6; the former contract entered into on November 10, 1981.

8. See N.T. 13–20 (Hearing of December 3, 1984).

9. See N.T. 5, 6 (Hearing of December 3, 1984).

level of 1500 gallons or less in the unleaded tanks and 800 gallons or less in the leaded tank.[10]

This proposed franchise change was proffered by the plaintiff and is represented to be a workable requirement to avoid running out of product. It is clear that for causes beyond the plaintiff's control (weather, truck breakdowns, strikes, etc.), the plaintiff cannot be held responsible under the Petroleum Marketing Practices Act if such events cause a failure in the franchisee's obligations to the franchisor. *See* 15 U.S.C. § 2801(13)(B).

## I. *Burden of Proof*

A franchisor, such as Sun in this case, who wishes to refuse renewal of a franchise has the burden of proving compliance with all the statutory requirements of PMPA. 15 U.S.C. § 2805(c). Under that section, the franchisee, such as plaintiff here, has the burden of proving the non-renewal of the franchise relationship, which he has done. Thereafter, the franchisor bears the burden of going forward with evidence to establish an affirmative defense that such non-renewal was permitted under § 2802(b).

Under § 2802(b) there are two groups of grounds upon which a franchisor can rely in establishing a right to non-renew. The first group found in § 2802(b)(2) includes five subjects and applies to terminations and non-renewals. The second group, subsection (3) of § 2802(b), contains four subjects and applies only to non-renewals.

## II. *As to § 2802(b)(2)*

Of the five subjects covered in this section, only three are pertinent to this case. They are §§ 2802(b)(2)(A), (B), and (C) as follows:

(2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

(B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise, if—

(i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and

(ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

---

**10.** See paragraph 7(d)(i), (ii) and (iii) of Exhibit "C" to Plaintiff's Motion to Amend His Complaint.

Sections 2802(b)(2)(D) and (E) are not applicable to this case.

■ Under § 2802(b)(2)(A), the refusal to renew is justified if the franchisee fails to comply with the provision of the franchise which is both "reasonable and of material significance" to the franchise relationship. Here, out of the franchise relationship that expired on November 9, 1984, came unacceptable episodes of plaintiff running out of fuel from causes within his control. A requirement by Sun that such a practice not be permitted to happen in any renewal period would be a reasonable request by Sun of, as the court found, a matter of material significance to the franchise relationship. The difficulty with defendant's position here, however, is that at this time the plaintiff *is* offering, as a binding provision of a renewal franchise contract, a procedure that in plaintiff's opinion will prevent running out of product.[11] Despite this, Sun refuses renewal. Sun has the burden of going forward with the evidence to show that plaintiff, during a renewal period, will fail to comply with this reasonable proposed provision covering something of a material significance. The provision is both facially reasonable in view of the record in this case, and the plaintiff's opinion as an experienced franchisee that it will succeed in any renewal period. It should be noted that this opinion has not been opposed by any evidence of Sun. Accordingly, Sun has not met its burden of proof that it is justified in resisting non-renewal under subsection (A).

■ The essence of the plaintiff's obligation under § 2802(b)(2)(B) is that he must exert good faith efforts to carry out the provisions of the franchise. Since we are talking about renewal, a possible application of this ground to Sun's refusal to renew could be that the plaintiff is currently either failing to exercise good faith to arrive at a reasonable accommodation to Sun's needs concerning running out of fuel in the future, or, that the plaintiff will fail during the renewal period to exercise good faith to carry out any provision of the franchise governing running out of fuel. However, Sun has come forward with no evidence to support a conclusion that either or both of these interpretations showing a lack of good faith by the plaintiff currently exists or would exist during a renewal period. Sun has not met its burden of proof under subsection (B) and renewal cannot be resisted on this ground.

Subsection (C) of § 2802(b)(2) is somewhat of a catch-all provision that allows flexibility to the franchisor to point to events that are not capable of precise description or identification until they occur, but which would be relevant to the relationship and would be events of such a type that by virtual definition non-renewal would be "reasonable." This subsection must be read together with § 2802(c) which sets forth in considerable detail twelve examples of the types of events that would be not only relevant but of such magnitude that termination or non-renewal would be deemed reasonable virtually without question. These examples include fraud or criminal conduct; declaration of bankruptcy; mental and physical disability of the franchisee for three months or longer; loss of right of the franchisor of possession of the leased premises; condemnation of all or part of the franchise premises; loss of franchisor's trademark privileges without fault of the franchisor; destruction of the franchise premises; failure by the franchisee to operate for seven days or longer; adulteration, mislabeling, or misbranding by franchisee of fuels; franchisee's knowing failure to obey federal, state or local laws; or conviction of franchisee of any felony involving moral turpitude. These events are plainly of the type that by mere occurrence would justify, without more, a termination or non-renewal of the relationship by the franchisor. It should be noted, however, that even with matters as serious and as plainly objectionable as the conduct represented by these examples, in view of the Act's specific intent to benefit franchisees, § 2802(c) has been held not to be a

**11.** See N.T. 5–7 (Hearing of December 3, 1984).

per se termination rule favoring franchisors. *See Sun Refining and Marketing Company v. Rago,* 741 F.2d 670 (3d Cir. 1984). In view of the intent of the Act to protect franchisees from both termination and non-renewal, we construe this authority to extend to non-renewal circumstances as represented by the record in the case before us with the same binding effect as cases involving termination.

■ Assuming that the plaintiff's experience of running out of fuel, as far as being a relevant event is concerned, is the type of event contemplated by § 2802(c), non-renewal is not reasonable here. (Indeed, there is serious doubt as to whether or not that particular event could have been the basis of a termination of the since expired franchise in view of Sun's knowledge of the practice *before* entering into the franchise and an election in the face of such knowledge not to include a running out of fuel provision as a provision of the franchise contract.[12]) In order for Sun to consider the history of running out of fuel as a reasonable basis not to renew for the future, there must be *some* evidence that plaintiff is unwilling to change his ways or unwilling to be legally bound in a manner that will result in a change of procedures that would avoid running out of fuel. The plaintiff has not insisted upon his right to repeat the past, indeed, he has offered a provision for a new franchise, that Sun refuses to address, that facially appears to be workable, and carries with it plaintiff's opinion that remains unanswered by Sun, that the plan will work. That evidence is buttressed by the mathematical reality of plaintiff's underground tank capacity that plaintiff can do no more to conform to Sun's method of allowing plaintiff to reorder Sun's product for sale at the franchise premises. Accordingly, the running out of fuel is clearly relevant to the franchise relationship in any renewal period. However, there is no evidentiary support for Sun's position that the fear of such event

occurring in the future makes it a reasonable ground to refuse to renew.[13]

### III. *As to § 2802(b)(3)*

Under subsection (3) of § 2802(b), there are four grounds for non-renewal of a franchise relationship. The only ground pertinent to this case is that set forth in subparagraph (A) of § 2802(b)(3), which reads as follows:

(3) For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

The other three subsections do not apply to the parties in this case but cover circumstances where the franchisor receives bona fide customer complaints; the failure by the franchisee to operate a clean, safe, and healthful premises; and an election in good faith by the franchisor to convert the premises, replace them, or sell the premises, or similar dispositive steps taken by the franchisor to abandon the franchise premises.

■ The substance of § 2802(b)(3)(A) is that a franchisor is not required to renew if the parties cannot come to terms for the new franchise. The franchisor, however, in refusing to come to terms, can only do so as a result of decisions made in good faith and in the normal course of business *and* the failure to come to terms cannot be the result of franchisor's insistence upon changes or additions where the underlying purpose is to prevent renewal. Here, it is plain that there must be a change in the

---

**12.** See D–1; dated September 4, 1981.

**13.** See N.T. 41–43 (Hearing of November 14, 1984).

franchise relationship to protect Sun from the running out of fuel by plaintiff. Plaintiff is willing to make such a change in the contract and has submitted a proposal for Sun's consideration. Sun refuses to consider the proposal. Sun's position was best stated at the hearing of December 3, 1984, at pages 20 and 21:

THE COURT: All right.

If Mr. Rodgers' plan will work and he will not run out of product, do you have a position whether it will or will not work?

MR. TAYLOR: Your Honor, I have no position.

THE COURT: All right. If you have no position, how can it be reasonable to refuse renewal in the face of a plan that would appear to solve the problem?

There has to be a reason. Reasonable means based on reason.

I want to know what is your reason, if he has solved the running-out-of-product question. You are not telling me that, Mr. Taylor.

MR. TAYLOR: Your Honor, I think what I am saying is this. I think there is a point at which we don't have to consider any further proposals from Mr. Rodgers. I think we are at that point. I think we have satisfied our obligation under the statutory requirement under this Act. I think we are beyond the point where we have to consider any further proposals from this gentleman. That is what my position is, Judge Bechtle.

This arbitrary refusal to consider the proposed change in the franchise relationship is by definition a failure to exercise good faith and the very type of circumstance that the Act is intended to protect a franchisee against. Further, the fact that the franchisor is not merely insisting on changes or additions that are pretextual, but rather, does not want to consider any changes or additions at all, leaves this court the easy course of concluding and finding that such failure to consider the proposed terms can only be for the purpose of preventing renewal of the franchise relationship.

Again, Sun has the burden of going forward with the evidence to establish that in refusing to renew § 2802(b)(3)(A) its determinations arise out of an atmosphere and a position of good faith and not as a result of a determination to simply prevent renewal of the franchise. Sun has failed to meet its burden of proof in this respect and accordingly the plaintiff must prevail.

Furthermore, Sun has not demonstrated to the satisfaction of the court that any of the elements set forth in § 2805(e)(1) prevent the plaintiff from seeking the relief sought in this case.

An appropriate Order will be entered.

## FINAL ORDER

AND NOW, TO WIT, this 23rd day of January, 1985, IT IS ORDERED as follows:

1. The previous preliminary injunction entered by the court on December 3, 1984, preventing the defendant from changing the franchise relationship between the plaintiff and the defendant is hereby rendered as a final injunction; and

2. The defendant is hereafter, until further Order of court, enjoined from interfering in any way with the franchise relationship between the plaintiff and the defendant and the same shall continue hereafter for an additional three (3) year term under the same terms and conditions as governed the franchise relationship between the parties that expired on November 10, 1984, and as extended by stipulation of the parties to the date of this Final Order; and in addition, plaintiff shall be required to conform to each and every term of the proposal presented to Sun as Exhibit "C" to Plaintiff's Motion to Amend His Complaint, filed with the court on December 12, 1984; and

3. The court shall retain continuing jurisdiction of this civil action.