**MOBIL OIL CORPORATION,**
Plaintiff–Appellee,

v.

**Theadeous S. KARBOWSKI, d/b/a Ted's Mobil Service Station,**
Defendant–Appellant.

**No. 1133, Docket 89–7056.**

United States Court of Appeals,
Second Circuit.

Argued April 21, 1989.

Decided July 12, 1989.

Carl T. Holt, Stamford, Conn. (Richard W. Farrell, Farrell & Barr, Stamford, Conn., of counsel), for defendant-appellant.

Andrew J. Kilcarr, Washington, D.C. (Edward C. Duckers, Hogan & Hartson, Washington, D.C., of counsel), for plaintiff-appellee.

Before KEARSE, ALTIMARI and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Theadeous S. Karbowski appeals from a judgment of the United States District Court for the District of Connecticut (Nevas, J.) granting

plaintiff Mobil Oil Corporation's ("Mobil") motion for summary judgment under Fed. R.Civ.P. 56. This action arose under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2841 (1982) ("PMPA"). Mobil sought to terminate its franchise agreement with Karbowski because he allegedly failed to comply with provisions of the franchise which were both reasonable and of material significance to the franchise relationship, *see id.* at § 2802(b)(2)(A), and failed "to exert good faith efforts to carry out the provisions of the franchise." *Id.* at § 2802(b)(2)(B). Mobil also asserted claims of fraud and breach of contract under Connecticut law. In response, Karbowski filed various counterclaims arising under both the PMPA and Connecticut law. The district court found that there were no issues of material fact and accordingly granted Mobil's motion for summary judgment as to its PMPA claims and dismissed all counterclaims.[1] On this appeal, Karbowski contends, *inter alia,* that the district court erroneously interpreted and applied the termination provisions of the PMPA by not considering whether the franchise provisions at issue were objectively reasonable. We agree that the district court improperly employed a subjective standard of reasonableness in its application of section 2802(b)(2)(A). For the reasons that follow, however, we find Karbowski's franchise to have been properly terminated under section 2802(b)(2)(B), and we affirm the judgment of the district court.

## BACKGROUND

Defendant Karbowski, as a franchisee of Mobil, operated Ted's Mobil Service Station ("the station") at the Branford, Connecticut exit of Interstate 95. Karbowski and Mobil first entered into a franchise agreement in March 1976. The agreement has been renewed periodically since then. The instant dispute concerns adherence to terms of the renewal agreement entered into on March 29, 1985 which covered the period from April 1, 1985 to March 31, 1988.

Under the terms of the original agreement, Karbowski was not required to operate his station 24 hours per day. In the years following that agreement, the area surrounding the station underwent increased commercial development. By the time the disputed renewal agreement was entered into, both a branded truck stop/service station located across the street from Karbowski's station and a nearby unbranded service station were operating continuously.

In November 1984, Mobil conducted an evaluation of Karbowski's station in order to determine whether to retain the property. Mobil concluded that the station's proximity to round-the-clock traffic on the interstate and new commercial development in the area compelled that the franchise be renewed to operate 24 hours per day. Accordingly, the franchise renewal proposal which Mobil presented to Karbowski on November 26, 1984 specified that the station was to be operated "24 hours per day, 7 days per week."

Karbowski, through his attorney, voiced concern over rent increases and the hours of operation clause contained in the proposed renewal agreement. Nevertheless, on March 29, 1985, he signed the agreement renewing the franchise until March 31, 1988.

Karbowski never complied with the hours of operation provision of the final renewal agreement. In addition, he had not complied with a provision which required him to purchase a minimum of 31,250 gallons of gasoline from Mobil each month. On May 22, 1985, Mobil representatives met with Karbowski to discuss his failure to comply with the franchise agreement. At that meeting, Karbowski stated that he had no intention of keeping the station open 24 hours per day. Thereafter, Mobil repeatedly notified Karbowski by let-

---

1. It was unclear from the district court's opinion whether all of Mobil's claims were addressed by summary judgment. Subsequently, Judge Nevas issued a clarification stating that summary judgment was granted only with respect to Mobil's PMPA claims and all counterclaims. The district court then directed entry of final judgment pursuant to Fed.R.Civ.P. 54(b) as to all claims addressed by summary judgment.

ter of his continuing failure to adhere to terms of the franchise agreement.

On November 15, 1985, Judy L. Schultz, the District Manager of Mobil's Westchester/Connecticut District, wrote to Karbowski. She advised him that he still had not complied with the franchise agreement and she suggested methods by which compliance could be achieved. Schultz outlined various programs offered by Mobil to increase its dealers' gasoline sales. Moreover, Schultz offered temporarily to adjust the hours of operation specified in the agreement in order to facilitate Karbowski's transition to 24–hour–per–day operation. Karbowski, however, returned the letter to Schultz after having written "Totally unexceptable [sic] Ted Karbowski. 11/18/85" over much of the second page.

Mobil continued to communicate with Karbowski concerning his refusal to operate 24 hours per day and his lack of compliance with the minimum gallonage requirement. Finally, by letter dated June 26, 1986, Mobil notified Karbowski that his franchise would be terminated on September 30, 1986. The stated grounds for termination were: (1) failure to comply with provisions which are both reasonable and of material significance to the franchise relationship, 15 U.S.C. § 2802(b)(2)(A); and (2) failure to exert good faith efforts to carry out the provisions of the franchise. *Id.* at § 2802(b)(2)(B).

Mobil initiated this action seeking a declaration that the termination was valid and an injunction to compel Karbowski to vacate the station premises. In response, Karbowski filed a motion for summary judgment, asserting that the termination was governed by the Connecticut Gasoline Dealers Act, Conn.Gen.Stat. §§ 42–133j to 42–133n (1987) ("Connecticut Act"). The district court denied Karbowski's motion, holding that the Connecticut Act was preempted by the PMPA. *Mobil Oil Corp. v. Karbowski,* 667 F.Supp. 927 (D.Conn. 1987); *see also Darling v. Mobil Oil Corp.,* 864 F.2d 981, 988 (2d Cir.1989). Subsequently, the court granted Mobil's motion for summary judgment as to its PMPA claims and dismissed defendant's counterclaims.

## DISCUSSION

■ Karbowski contends that the district court applied the wrong standard in evaluating Mobil's termination of his franchise. Specifically, he argues that in order to support a termination under either section 2802(b)(2)(A) or 2802(b)(2)(B), the franchise provisions at issue must be objectively reasonable.

Under section 2802(b)(2)(A), "[a] failure by the franchisee to comply with any provision of the franchise, which provision is both *reasonable* and of material significance to the franchise relationship" is a ground for termination of the franchise (emphasis added). In *Darling v. Mobil Oil Corporation,* 864 F.2d 981, 991 (2d Cir. 1989), we held that "the proper standard under § 2802(b)(2)(A) is one of *objective reasonableness*" (emphasis added). Here, in determining whether the termination of Karbowski's franchise was proper under this section, the district court stated that "[t]he court's inquiry is subjective." We agree with Karbowski that the district court employed the wrong standard in its application of section 2802(b)(2)(A). Remand is not necessary, however, because we do not agree that the provisions which form the basis for termination under section 2802(b)(2)(B) must be objectively reasonable.

■ Under section 2802(b)(2)(B), "failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise" is a ground for termination. In contrast to section 2802(b)(2)(A), the term "provisions" is not modified by the adjective "reasonable" in section 2802(b)(2)(B). Nevertheless, Karbowski asks us to read the phrase "objectively reasonable provisions" into the statute.

"The starting point for our interpretation of a statute is always its language." *Community For Creative Non–Violence v. Reid,* —— U.S. ——, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989). A court must "assume 'that the legislative purpose is expressed by the ordinary meaning of the

words used.'" *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). Thus, "[a]bsent a clearly expressed legislative intention to the contrary, [the language used] must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Moreover, settled principles of statutory construction dictate that, where possible, a statute be construed so that all of its parts are given effect. *See, e.g., Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 163, 102 S.Ct. 3014, 3027, 73 L.Ed. 2d 664 (1982); *American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981).

Congress enacted the PMPA to establish "minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel." S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 873 ("*Senate Report*"). The overriding purpose of the PMPA is to provide "protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." *Id.* at 874. *See also Nassau Boulevard Shell Serv. Station, Inc. v. Shell Oil Co.*, 875 F.2d 359, 362 (2d Cir.1989); *Darling*, 864 F.2d at 983. Such protection was needed to curtail the widespread abuse by petroleum franchisors of their ability to terminate franchises. *See Senate Report* at 875–76.

While the primary purpose of the PMPA is to provide protection for franchisees, Congress also recognized that "[s]ome contractual violations ... may be so serious as to undermine the entire [franchise] relationship." *Id.* at 876. Thus, Congress sought to balance "the legitimate needs of a franchisor to be able to terminate a franchise ... based upon certain actions of the franchisee," *id.* at 877, against the need to protect a franchisee from arbitrary or discriminatory termination. Congress achieved this balance by prohibiting all ter-

minations of petroleum franchises other than those based upon statutorily enumerated grounds. *See* 15 U.S.C. § 2802(a).

The statutory grounds for termination, in addition to the grounds here at issue, are: "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination ... is reasonable," *id.* at § 2802(b)(2)(C); "[a]n agreement ... between the franchisor and the franchisee to terminate," *id.* at § 2802(b)(2)(D); and "a determination made by the franchisor in good faith and in the normal course of business to withdraw from the marketing of motor fuel through retail outlets in the relevant geographic market area." *Id.* at § 2802(b)(2)(E). The PMPA also sets forth notice and time constraints which must be observed to effect a valid termination. *See id.* at §§ 2802(b)(2), 2804. In addition to grounds for termination, the statute specifies grounds that provide a basis for not renewing a franchise at the expiration of an agreement. *See id.* at § 2802(b)(3).

Karbowski argues that it is consistent with congressional intent to read section 2802(b)(2)(B) as containing the words "objectively reasonable." However, he has failed to bring to our attention any authority in support of this contention. To the contrary, a substantial number of courts have applied section 2802(b)(2)(B) without injecting the word "reasonable" into their analysis. *See, e.g., Rodgers v. Sun Ref. & Mktg. Co.*, 603 F.Supp. 140, 144 (E.D.Pa.), *rev'd on other grounds*, 772 F.2d 1154 (3d Cir.1985); *Exxon Corp. v. Gonzalez*, [1985–86 Transfer Binder] Bus. Franchise Guide (CCH) ¶ 8440, at 15, 705 (S.D.Fla. Sept. 24, 1985); *Amoco Oil Co. v. Beyer*, [1983–85 Transfer Binder] Bus. Franchise Guide (CCH) ¶ 8062, at 13, 974–75 (N.D.Ill. Sept. 21, 1983); *Kajdan v. Exxon Co., U.S.A.*, 1980–1 Trade Cas. (CCH) ¶ 63,262, at 78,305 (D.Conn.1980). We agree that Congress' intent can best be achieved by a literal application and not by reading the term "reasonable" into section 2802(b)(2)(B).

Viewed in isolation, this construction might seem odd for a statute whose primary aim is to protect franchisees. We

find, however, that a literal reading of section 2802(b)(2)(B) best preserves the "counterpoise between fairness to franchisees and flexibility for franchisors that Congress established." *Darling*, 864 F.2d at 988; *see also Senate Report* at 874. This can be demonstrated by considering section 2802(b)(2)(B) in conjunction with the PMPA nonrenewal provisions.

Congress specified that a franchisor may choose not to renew a franchise when the parties fail "to agree to changes or additions to the provisions of the franchise, if ... such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business." 15 U.S.C. 2802(b)(3)(A). In order to "avoid judicial scrutiny of the business judgment[s]" of franchisors, *Senate Report* at 896, Congress elected not to require that the proposed provisions be reasonable. *See Darling*, 864 F.2d at 990 ("Congress rejected the former reasonableness test and inserted the current 'good faith and normal course of business' language in its place").

Were we to adopt Karbowski's reading of section 2802(b)(2)(B), we would render section 2802(b)(3)(A) nugatory. Under his interpretation, franchisees could agree to proposed terms merely to avoid nonrenewal, and they could then refrain from making any effort towards compliance with those terms.

Instead, we find it to be consistent with congressional intent that where a franchisee has agreed to provisions—reasonable or not—proposed by a franchisor in good faith and in the normal course of business, the franchisee has a duty to make good-faith efforts to comply with those provisions or risk termination. Where no effort has been made toward compliance and there is no evidence that the franchisor acted arbitrarily or discriminatorily, termination is surely permissible. If, on the other hand, good-faith efforts to comply have been made, then termination may properly be effected only if the provision is "both reasonable and of material significance to the franchise relationship." 15 U.S.C. § 2802(b)(2)(A).

Turning to the record on this appeal, it is undisputed that Mobil notified Karbowski of his failure to comply with provisions of the franchise, and afforded him a reasonable opportunity to comply. Our search of the record reveals no good-faith effort by Karbowski to comply with either the hours of operation or the minimum gallonage provision. Accordingly, termination of Karbowski's franchise pursuant to section 2802(b)(2)(B) was proper.

## CONCLUSION

We have examined each of Karbowski's remaining claims and find them to be without merit. For the reasons stated above, the judgment of the district court is affirmed.