**David DARRAH, Plaintiff,**

v.

**CROWN CENTRAL PETROLEUM, Defendant.**

**CROWN CENTRAL PETROLEUM CORPORATION, Counterplaintiff,**

v.

**David DARRAH, Counterdefendant.**

**Civ. A. No. 89–47–COL.**

United States District Court, M.D. Georgia, Columbus Division.

May 30, 1990.

Allen C. Levi of Kelly, Denney, Pease & Allison, Columbus, Ga., for plaintiff.

W.G. Scrantom of Page, Scrantom, Harris & Chapman, P.C., Columbus, Ga., and M.A. Sacks of Cable, McDaniel, Bowie & Bond, Baltimore, Md., for defendant.

### OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ELLIOTT, District Judge.

For several years prior to 1989 the Plaintiff, David Darrah (Darrah), had had a franchise dealership agreement with Crown Central Petroleum Corporation (Crown) applicable to a Crown Service Station located on Manchester Expressway in Columbus, Georgia, identified as Crown's GA–28, the most recent agreement having been for the period commencing October 1, 1988, and

---

ending September 30, 1989. Crown gave Darrah a Notice of Termination of the dealership on July 19, 1989, the termination to take effect on October 21, 1989, in order to afford Darrah the 90 days notification required by applicable federal law. In the Notice of Termination Crown pointed out that Darrah's sales in the third quarter (April, May, and June, 1989) of the franchise agreement had been 38% below the contractually specified minimum gallonage requirement applicable to the service station and that the dramatically declining sales which had been experienced at the station during the one year term of the subject agreement commencing October 1, 1988, and ending September 30, 1989, had been "aggravated by [Darrah's] non-competitive posture throughout the term" and that Crown had been left "with no practical alternative other than to terminate [Darrah's] dealership." It is clear that the Notice of Termination followed several prior warning letters which had been sent to Darrah regarding his repeated contractual minimum gallonage violations, the most recent being a letter dated June 6, 1989.

In this action Darrah asserts that the franchise agreement has been illegally terminated and requests a preliminary injunction pending trial on the merits. Subsequent discussions between the parties resulted in an agreement that Darrah could continue his occupancy and operation of the station during discovery and pending presentation of the matter to the Court.

In its answer to Darrah's complaint Crown asserted various affirmative defenses and filed its compulsory counterclaim against Darrah. In the counterclaim Crown noted the gross amounts by which Darrah had violated his minimum gallonage obligations and in Count I of the counterclaim seeks a declaration by the Court validating Crown's action under the Petroleum Marketing Practices Act ("PMPA") in terminating the Darrah dealership. Count II of the counterclaim seeks damages flowing from Darrah's breach of his minimum sales obligations.

For several months the parties have engaged in extensive discovery which has now reached the point where the case is ripe for consideration of Crown's motion for summary judgment.

Upon a review of the matter the Court concludes that there is no controversy concerning the following facts which are all of the facts deemed material for consideration of the issue presented, the central issue being the validity of the termination of Darrah's service station dealership by Crown pursuant to the Notice of Termination dated July 19, 1989:

1. In each of his franchise contracts with Crown from 1986 forward Darrah had been required to sell 225,000 gallons of gasoline on a monthly basis.

2. The 1988–1989 Agreement called for Darrah to sell an average monthly quantity of 225,000 gallons of gasoline.

3. Prior to the month of October 1988, when the 1988–1989 Agreement went into effect, Darrah regularly sold the requisite gallonage and in doing so had a profitable operation.

4. Darrah failed to sell the required minimum volume in October, November, and December 1988, and in January, February, March, April, May, and June 1989.

5. Darrah's Crown dealership was not terminated for reasons of his minimum gallonage violations in the first contractual quarter (October, November, and December, 1988) nor in the second contractual quarter (January, February, and March, 1989), but he was warned by Crown that if he should violate that contract obligation in the third quarter (April, May, and June 1989) his dealership would be terminated.

6. During the third contractual quarter Darrah's sales at GA–28 totalled 434,374 gallons, an average monthly sales volume of 144,791 gallons.

7. Because of such subminimum sales during the third quarter and in accordance with applicable provisions of the agreement, Crown sent Darrah a Notice of Termination of the franchise agreement and franchise dealership between the parties on July 19, 1989.

8. The Notice of Termination complied with all notification requirements of the PMPA.

9. From 1986 to the time of the termination there was no significant change in the number or character of the competing service stations in the immediate market area of GA–28 on Manchester Expressway in Columbus.

10. From 1986 to the time of the termination there was no reduction in the traffic flow on Manchester Expressway available for patronage at GA–28.

11. From the commencing of the 1988–1989 Agreement up to the time of termination Darrah consistently sold his Crown gasoline to the public at prices at least six cents per gallon higher than the prevailing prices charged by his nearby competitors on Manchester Expressway.

12. Although frequently requested to do so by Crown, from the commencement of the 1988–1989 Agreement up to the time of termination Darrah never sold his Crown gasoline products at a price competitive with those charged by his competitors on Manchester Expressway because he was concerned that doing so would render GA–28 unprofitable.

It must be kept in mind that this is a case in which an oil company terminated a dealership for reasons deemed by it to be adequate. It is not a case where the oil company refused to renew a dealership agreement. Stated otherwise, this is a termination case, not a non-renewal action, and, that being true, all of the facts above recited concerning which there is no disagreement are the only facts material for a resolution of this matter.

15 U.S.C. Section 2802(b)(2)(A) authorizes termination of service station dealerships where there has been a violation of a provision of a franchise agreement which is "both reasonable and of material significance to the franchise relationship" and 15 U.S.C. Section 2802(b)(2)(B) authorizes such terminations where the dealer-franchisee has failed to exert "good faith efforts" to carry out the provisions of the franchise.

The brief filed on behalf of Darrah addresses the issue of "reasonableness" of the minimum gallonage clause but does not challenge its "materiality." The brief makes no reference to the "good faith efforts" issue, possibly because it is clear from the record that Darrah's admitted conduct of pricing his Crown gasoline products to the public at prices significantly higher than those charged by his competitors on Manchester Expressway caused the dramatic erosion of sales at his service station and resulting violations of his minimum gallonage obligations. As he readily admits, he never, during the contract term, endeavored to compete with such competitors by posting competitive prices, excusing his conduct by asserting his concern that if he would have done so he would have lost money. In this situation it is not necessary for the Court to give consideration to a question of "reasonableness" because where good faith efforts to comply with a contract provision have not been made as provided in (b)(2)(B) no inquiry need be made into the issue of "reasonableness" under (b)(2)(A). *Mobil v. Karbowski*, 879 F.2d 1052, 1055 (2nd Cir.1989).

However, in the event it is thought that the Court should address the issue of "reasonableness" the Court, in the interest of judicial economy, will do so.

The Court does not judge the reasonableness of the minimum gallonage provision from the perspective of either Darrah or Crown. Instead, the Court determines reasonableness and materiality from the standpoint of a neutral observer, and, applying this objective standard, the Court concludes that the minimum gallonage provision included in the franchise agreement is reasonable and material and, having so determined, the Court further concludes that Darrah in this action fails to raise a sufficiently serious question to make the issue of the permissibility of Crown's termination a fair ground for litigation. See *Doebereiner v. Sohio*, 880 F.2d 329 (11th Cir.1989); rehearing denied 893 F.2d 1275 (11th Cir.1990).

**1442**

Consistent with the foregoing, we are led ineluctably to conclude that Crown's motion for summary judgment on Darrah's complaint and on Count I of its counterclaim should be and the same is hereby sustained. Counsel for Crown will submit a form of judgment to be entered.

IT IS SO ORDERED.