**Richard L. NAFF, Plaintiff,**

v.

**The STANDARD OIL COMPANY, Defendant.**

No. C-3-80-229.

United States District Court, S. D. Ohio, W. D.

Nov. 4, 1981.

William R. Coen, Dayton, Ohio, for plaintiff.

Leo F. Krebs, Dayton, Ohio, Robert Fishman, Law Dept., Standard Oil Co., Cleveland, Ohio, for defendant.

## DECISION AND ENTRY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, FOR THE REASON THAT THERE EXIST GENUINE ISSUES AS TO MATERIAL FACTS

RICE, District Judge.

This matter involves alleged violations of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.*, by the Defendant, Standard Oil Company (Sohio), occasioned when Defendant terminated two marketing agreements with the Plaintiff, Richard Naff. Defendant has moved for summary judgment, pursuant to Fed.R. Civ.P. 56, for three reasons, to wit:

1. The PMPA is not applicable to this action since Plaintiff is neither a "retailer" nor "distributor" as required by § 101(1)(A) of the PMPA;

2. The PMPA is also not applicable since the marketing agreements did not concern "motor fuel" as defined by the PMPA, § 101(12);

3. Even if the PMPA is applicable, there was *no* violation of the PMPA or

breach of contract, since the termination was in conformity with the notice requirements of the Act, §§ 102, 104.

For the reasons set forth below, Defendant's motion is not well taken and the same is hereby denied.

## I.

The Plaintiff had been working as a distributor of Sohio products for Defendant since 1967. On September 1, 1978, Plaintiff signed two agreements with Defendant, a Consumer Marketer Agreement and a Consumer Marketer Motor Fuel Agreement, which were to be effective through November 30, 1979, and December 31, 1979, respectively. Under these agreements, Plaintiff picked up products at Defendant's bulk plant in Piqua, in a tank transport, for delivery to customers in the Dayton area.

As a result of a field audit at the Piqua bulk plant, Defendant discovered shortages of receipts for products in the amount of $29,200 for the period between November 3, 1977 and September 30, 1978, and in the amount of $19,500 for the period between October 1, 1978, and February 2, 1979.[1] Upon investigation, Defendant decided that a portion of the losses was attributable to the actions of the Plaintiff. Based on this investigation, the marketer agreements with Plaintiff were terminated on June 12, 1979. An employee of Defendant personally delivered notice of the termination to Plaintiff on June 11, 1979. Upon a further audit, Defendant determined that Plaintiff was responsible for losses in the amount of $6,576.00.

1. Defendant presents these figures in an affidavit sworn to by Leo F. Krebs, an attorney for Sohio. However, there is no indication that Mr. Krebs had "personal knowledge" of such facts, as required by Fed.R.Civ.P. 56(e). Plaintiff has not objected to this affidavit. It is accepted that this requirement is mandatory, see 10 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2738 at 638 (1973), since Rule 56(e) states that "affidavits *shall* be made on personal knowledge." (emphasis added). Nevertheless, some courts have suggested that the requirement is waivable if not objected to by the opposing party. *See, e.g., Williams v.*

Plaintiff thereafter filed suit under the PMPA, and invoked the jurisdiction of this Court pursuant to 15 U.S.C. § 2805. Plaintiff alleged that Defendant violated provisions of the PMPA, in that the notice of and reasons for termination were inadequate under the Act, and prayed for damages. In addition, Plaintiff alleged that he had not in any way violated the marketer agreements and that, in fact, the termination was due to Plaintiff's activities in unionizing Defendant's workers. Defendant in its answer denied that it had violated the Act, and counterclaimed for the amount of shortage of receipts from customers which Plaintiff allegedly owed Defendant. Plaintiff has denied any responsibility for the shortages alleged in the counterclaim.

## II.

On a Rule 56 summary judgment motion, the burden is on the moving party to show conclusively that there exists no genuine issue as to any material fact, considering the evidence most favorably to the party against whom the motion is directed. *Watkins v. Northwestern Ohio Tractor Pullers*, 630 F.2d 1155, 1158 (6th Cir. 1980). With this standard in mind, this Court now considers the reasons urged in support of Defendant's motion.

1. *Plaintiff's Status as a "Distributor" Under the PMPA is a Genuine Issue of Material Fact.*

The PMPA, enacted in 1978, establishes minimum standards for the termination of retailers and distributors of motor fuel by the suppliers of the fuel. To fall under the protection of the Act, Plaintiff must be

*Evangelical Retirement Homes*, 594 F.2d 701, 703–04 (8th Cir. 1979) (*per curiam*). This Court need not pass on the issue since two other affidavits of Sohio employees (docs. 11, 12) attest in some detail to the shortages allegedly attributable to the plaintiff, and said affiants had "personal knowledge" of the facts relating to the alleged shortages. While these latter affidavits do not set forth the figures indicated in the text, they provide an independent basis for Sohio to allege in its summary judgment motion that shortages were attributable to the Plaintiff.

either a "retailer" or a "distributor" of motor fuel. 15 U.S.C. § 2801(1)(A). These terms are defined in the Act. A "retailer" means "any person who purchases motor fuel for sale to the general public for ultimate consumption." § 2801(7). However, Plaintiff does not contend that he, at any time, was "purchasing" Sohio products.

Hence, to receive the protection of the PMPA, Plaintiff must be a "distributor." The Act defines that term as a person who

(A) purchases motor fuel for sale, consignment, or distribution to another; or

(B) receives motor fuel on consignment for consignment or distribution to his own motor fuel accounts or to accounts of his supplier, but shall not include a person who is an employee of, or merely serves as a common carrier providing transportation service for, such supplier.

§ 2801(6)(A)–(B).

Once again, since Plaintiff did not purchase Sohio products, § 2801(6)(A) does not apply and this Court must examine § 2801(6)(B) for purposes of ascertaining his status as a "distributor." That portion of the definition excludes persons who are "employees" of the supplier of motor fuel.

 Defendant vigorously argues that Plaintiff is an employee of Sohio. Defendants rests its argument principally on a decision of the National Labor Relations Board (NLRB), which held in 1979 that "consumer marketers" of Sohio (such as Plaintiff herein) were "employees" for the purpose of conducting an election for a union under the labor laws. *Standard Oil Company,* 241 N.L.R.B. 1248 (1979). The decision of the NLRB, Defendant contends, should be applicable to the instant case under the doctrine of collateral estoppel, thus barring Plaintiff's litigation.[2] As Defendant correctly points out, collateral es-

toppel has not been limited to the application of decisions in previous court proceedings, but also applies to the rulings of administrative proceedings which are judicial in nature. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Tipler v. E.I. duPont deNemours & Co.,* 443 F.2d 125, 128 (6th Cir. 1971). There is no question that the NLRB decision was judicial in nature. *Tipler, supra.*

 There are, however, limitations to the application of collateral estoppel which are relevant to the instant case. First, the factual circumstances considered in the first decision must be identical to or closely related to the factual circumstances in the litigation to which collateral estoppel is sought to be applied. *Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434, 439–40 (6th Cir. 1981); *Tipler, supra,* 443 F.2d at 129–30. In other words, the issue in the second action must have been litigated and necessary to the outcome of the first action. *See* note 2, *supra.* Second, collateral estoppel only applies against a party to the first action, unless the party in the second action was a "privy" to the party in the first action. *Brown v. Felson,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1974); *Shimman v. Frank,* 625 F.2d 80, 89 (6th Cir. 1980). These limitations preclude the application of collateral estoppel in the instant case.

 With regard to the first limitation, the NLRB simply did not decide the issue of an employee's status under the PMPA. The NLRB did address in some detail the business relationships between Sohio and its' "consumer marketers" (such as Plaintiff herein), including the agreements at issue in the present case for purposes of interpreting the labor laws. The

---

**2.** The interrelated doctrines of res judicata and collateral estoppel are occasionally confused. Under the former doctrine, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the latter doctrine, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of *issues* actually liti-

gated and necessary to the outcome of the first action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, n.5, 99 S.Ct. 645, 649, n.5, 58 L.Ed.2d 552 (1979); *Harrison v. Bloomfield Building Industries, Inc.,* 435 F.2d 1192, 1195 (6th Cir. 1970). The parties characterize the instant case as one of collateral estoppel, and this Court agrees with that characterization.

National Labor Relations Act protects an "employee" only and specifically excludes "any individual having the status of an independent contractor." 29 U.S.C. § 152(3). Applying common law principles of agency, 241 N.L.R.B. at 1252 (citing *N.L.R.B. v. United Insurance Co.*, 390 U.S. 254, 259, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968)), the NLRB held that the terms of and the practical effect of the agreements required that the potential members of the union be considered "employees." 241 N.L.R.B. at 1252.

In contrast, the criteria for determining who is an "employee" under the PMPA is somewhat similar, but by no means identical to, the criteria applied in the labor law context. Neither the PMPA nor subsequent caselaw defines an "employee." However, the legislative history of the PMPA makes clear the criteria Congress intended to be applied in determining "employee" status. The following criteria were said to be "useful" in determining the status of workers:

(1) whether the supplier assumes obligations for withholding of income taxes, payment of FICA taxes and payment of unemployment compensation taxes;

(2) whether the supplier exercises general discretion and control commonly reserved to an employer or a principal;

(3) whether the consignee assumes the obligations for withholding of income taxes and payment of FICA taxes and unemployment compensation taxes; and

(4) whether the consignee determines the general methods of operation of his business, owns the appropriate facilities and equipment for the conduct of his business, *e.g.*, bulk plant and delivery trucks, exercises responsibility for the internal financial management and administration of his business, and assumes the responsibility to third parties, including those to whom he distributes motor fuel, for expenses and liabilities arising from the operation of his business.

S.Rep. No. 95–731, 95th Cong., 2d Sess. 30–31, *reprinted in* [1978] U.S.Code Cong. & Adm.News 873, 889.

Considerations (2) and (4) are similar to the considerations utilized by the NLRB in the *Standard Oil* decision. However, considerations (1) and (3) regarding withholding of income taxes by the supplier were not addressed by the NLRB. The fact that Congress referred to the tax information *twice* suggests that these criteria must at least be addressed and given some weight by the trier of fact in a PMPA action.

Hence, the NLRB did not purport to decide Plaintiff's status as an "employee" under the PMPA, a genuine issue of material fact in the present action. Since this issue was not actually litigated in and necessary to the outcome of the NLRB action, collateral estoppel cannot bar Plaintiff's action. Moreover, the difference between the issue litigated in the NLRB decision and that to be resolved in the present case is underscored by the legislative history of the PMPA, which indicates that somewhat different criteria will determine an employee's status under the PMPA as contrasted to this status under the labor laws.

With regard to the second limitation, only the Tank Truck Drivers Independent Union, Inc. (not Plaintiff or any other individual) was a party to the NLRB litigation. As noted above, in some narrow circumstances, collateral estoppel can apply to non-parties. For a non-party to be considered in privity to a party in the first proceeding, the rights of the party in the pending action must have been presented and adjudicated in the first proceeding, or the non-party must have controlled or participated in the litigation in the first proceeding. 1B Moore's *Federal Practice* ¶ 0.411[1] (2d ed. 1980). As discussed above, the precise issue of employee status under the PMPA was not addressed in the NLRB proceeding, and nothing in the record indicates that Plaintiff controlled or formally participated in the latter proceeding.

The cases cited by Defendant, permitting collateral estoppel to be applied against non-parties, are inapposite to the present action. Two of the cases, *Telephone Workers' Union v. New Jersey Bell Telephone Co.*, 584 F.2d 31 (3rd Cir. 1978); *Bolden v.*

*Pennsylvania State Police*, 578 F.2d 912 (3rd Cir. 1978), involved class actions, where class members sued after litigation by the class itself was concluded. A certified class will by definition adequately represent and protect the interests of the individual class members. Fed.R.Civ.P. 23. The NLRB proceeding was not a class action. In a third case cited by Defendant, *Panza v. Armco Steel Corp.*, 316 F.2d 69 (3rd Cir. 1963), the non-party to the first action had participated in the litigation in the first action.

In short, the lack of identity of issues or parties in the NLRB proceeding as compared with the instant case precludes the application of collateral estoppel. As the Sixth Circuit stated in a similar factual situation, "[a]bsent a special consideration, a determination arising solely under one statute should not automatically be binding when a similar question arises under another statute." *Tipler, supra,* 443 F.2d at 128–29. Such "special considerations" are not present herein.

 For these reasons, Plaintiff's status as a "distributor" under § 2801(6)(B) has not been determined by the NLRB decision and remains as a genuine issue of material fact to be resolved by the finder of fact. Sustaining the motion for summary judgment would not be appropriate.

2. *Whether the Marketing Agreements Concern "Motor Fuel" as Defined by the PMPA is a Genuine Issue of Material Fact.*

 The agreements entered into between Plaintiff and Sohio stated that the petroleum products covered by the agreements were "home heating oil, kerosene, and motor fuel for off highway uses." Only distribution of "motor fuel" is covered by the PMPA, § 2801(1), and the Act defines "motor fuel" as "gasoline and diesel fuel of a type distributed for use as a fuel in self-propelled vehicles designed primarily for use on public streets, roads, and highways." § 2801(12).

Since the listing of fuels in the marketer agreements does not overlap with the statu-

tory definition of "motor fuel," Defendant asserts that the PMPA does not apply to the agreements. Plaintiff argues, and sets forth by affidavit, that it was an accepted practice between the parties to use and refer to heating oil interchangeably with diesel fuel for highway use. If true, the marketer agreements (as so interpreted) would include "motor fuel" as defined by the PMPA. This is a genuine issue of material fact not properly resolvable on a motion for summary judgment.

3. *Whether the Termination of Plaintiff's Franchise Was in Conformity with the Notice and Termination Procedures Under the PMPA is a Genuine Issue of Material Fact.*

 Defendant's final argument is that even if the PMPA does apply to the agreements, the termination of Plaintiff was consistent with the Act. Under § 2802(b)(1), termination is only permitted if the notification requirements of § 2804 are satisfied and if the termination is based upon a ground set forth in § 2802(b)(2).

A supplier must furnish notification of termination not less than 90 days before the effective date of termination, unless "it would not be reasonable" for the supplier to furnish notice sooner. § 2804(b)(1). Defendant argues that the one-day notice presented to Plaintiff was reasonable in light of Plaintiff's alleged breaches of the agreements. Plaintiff denies any such wrongdoing. As Defendant's "reasonable" grounds for termination are a subject of dispute by the parties, the propriety of the notice of termination cannot be resolved in favor of the Defendant on summary judgment.

Similarly, the Defendant contends that Plaintiff's alleged wrongdoing was, under the statute, an "event" which made the termination "reasonable." § 2802(b)(2)(C). The statute defines as one such event the "failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled." § 2802(c)(8). Once again, the veraci-

ty of Defendant's version of this "event" is the subject of heated dispute between the parties, and precludes granting summary judgment.

### III.

Accordingly, Defendant's motion for summary judgment is not well taken and is overruled, for the above stated reasons.