**KOPPERS INDUSTRIES, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
**Defendant–Appellee.**

No. 89–15845.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1989.

Decided May 7, 1990.

Chester R. Babst, III, Babst, Calland, Clements & Zomnir, Pittsburgh, Pa., for plaintiff-appellant.

Ellen J. Durkee, Appellate Section, Lands & Natural Resources Div., Washington, D.C., for defendant-appellee.

Before WRIGHT, HUG and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Koppers Industries, Inc. ("Koppers") appeals from the district court's order denying its motion to quash and suppress all evidence arising from the execution of an administrative warrant issued to the Environmental Protection Agency (EPA) pursuant to section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA" or "Superfund"), 42 U.S.C. § 9604, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA").

Koppers alleges that the warrant and entry were not authorized under CERCLA and therefore violated its fourth amendment right to be free from unreasonable search and seizures. We affirm.

## FACTS AND PROCEEDINGS

Koppers operates a wood-treating plant in Oroville, California. In the early 1980's, portions of Koppers' property were found to have releases of certain pollutants into the soil and groundwater. Pursuant to its authority under CERCLA, the EPA investigated the releases and on September 21, 1984, added the Koppers site to the National Priorities List for cleanup.[1]

On April 25, 1986, Koppers and the EPA executed an Administrative Order on Consent No. 86–04 ("Consent Order") in which Koppers agreed to carry out a Remedial Investigation/Feasibility Study ("RI/FS") at the plant with EPA oversite. The purpose of an RI/FS is "to determine the nature and extent of the threat presented by the release[s]" and to develop alternatives to respond to those releases. 40 C.F.R. § 300.68(d).

Starting in late 1986, the EPA informed Koppers that it was failing to sufficiently address in its RI/FS releases of air contaminants associated with its ongoing wood-treating processes.[2] The EPA undertook an investigation of the air emissions after Koppers refused to conduct the requested air emissions studies, arguing that the EPA air monitoring program was not contemplated by the Work Plan for the RI/FS or the Consent Order. Koppers allowed

---

1. CERCLA directed the EPA to develop a National Priorities List for response priority purposes. *See* 42 U.S.C. § 9605(a)(8)(A). After a site is placed on the National Priorities List, the EPA investigates the potential threat to the public posed by the release or threat of release of waste materials. On finding that some type of response action is necessary, the EPA has three alternatives. It may:

   (1) remove the hazardous material itself or provide for other remedial action, subject to reimbursement by the responsible party, 42 U.S.C. §§ 9604, 9607;

   (2) issue an administrative order, enforceable through fines of up to $5,000 per day, directing a responsible party to implement either removal

or remedial action after it conducts a Remedial Investigation/Feasibility Study in accordance with section 9622, 42 U.S.C. § 9606; or

   (3) apply for an injunction in the district court to compel the responsible party to clean up or abate the actual or threatened release, 42 U.S.C. § 9606.

2. On November 17, 1986, the EPA received Koppers' revised "Report of Remedial Action Objective and Potential Remedial Alternatives," in which Koppers identified its wood treatment processes as potential sources of airborne contaminants. The Report, however, did not identify appropriate response actions for those airborne releases.

the EPA to collect air emission samples at the site from October 18 through October 22, 1988, and agreed to another round of air emissions sampling to commence the week of February 13, 1989. However, on February 10, 1989, Koppers informed the EPA that it would not permit further access to its facility to collect air emissions samples unless the EPA obtained a search warrant.

On February 14, 1989, the EPA applied for and obtained an *ex parte* administrative access warrant from a federal magistrate. The warrant was granted on the basis the EPA had "reason to believe that there has been a release of hazardous substances from the [Koppers] facility into the environment" and that air and water sampling was "necessary and appropriate in order to determine [the] nature and extent of the release, and the need for CERCLA response action." On February 14, 1989, the EPA entered the Koppers site pursuant to the warrant and completed its air sampling program.

On February 21, 1989, Koppers filed a motion to quash the warrant and to suppress all evidence obtained thereunder. On April 7, 1989, the district court ruled that the magistrate was authorized to issue the civil warrant and that it was properly issued under the authority of CERCLA, 42 U.S.C. § 9604(e), because there was "reasonable cause to believe that there may be a release or threat of a release of a hazardous substance or contaminant." On April 19, 1989, the district court entered an order denying Koppers' motion to quash the warrant and to suppress all evidence obtained thereunder. Koppers timely appeals from this order.

## DISCUSSION

### I. MOTION TO QUASH

The EPA argues that Koppers' appeal should be dismissed as moot because the EPA has fully executed the administrative warrant and the agency has proposed no further inspection or sampling of air emissions under section 104 of CERCLA. Thus, there is no "live controversy" between the parties—a reversal of the denial of the motion to quash will not provide Koppers with actual, affirmative relief. *See B & B Chem. Co. v. United States EPA*, 806 F.2d 987, 989 (11th Cir.1986).

This court lacks jurisdiction to hear moot cases. *See Matter of Bunker Ltd. Partnership*, 820 F.2d 308, 310 (9th Cir. 1987) (citing *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir.1984)). We have held that an appeal from the denial of a motion to quash an administrative warrant issued pursuant to CERCLA is moot where the warrant has been fully executed prior to the appeal. *Id.* at 310–11. Accordingly, Koppers' appeal from the order denying its motion to quash is moot. *Id.*

This finding of "mootness" does not end our inquiry, however. We have identified several exceptions which should be considered when deciding the reviewability of an appeal that is moot. The first exception occurs where the trial court's order will have possible collateral legal consequences. *See Powell v. McCormack*, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 1950–53, 23 L.Ed.2d 491 (1969); *Bunker Ltd. Partnership*, 820 F.2d at 311. The parties in this case, however, cite no collateral continuing legal disputes to which the execution of the administrative warrant has given rise. No citations or enforcement actions have been filed against Koppers under CERCLA. Moreover, "[t]he speculative contingency that such issues might arise 'afford[s] no basis for our passing on the substantive issues.'" *Bunker Ltd. Partnership*, 820 F.2d at 311 (quoting *Burke v. Barnes*, 479 U.S. 361, 107 S.Ct. 734, 737, 93 L.Ed.2d 732 (1987)).

The second exception arises where the issues involved are "capable of repetition, yet evading review." *See Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Luckie v. EPA*, 752 F.2d 454, 458 (9th Cir.1985). This exception is generally limited to cases in which the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation that the same com-

plaining party will be subject to the same action again. *Luckie,* 752 F.2d at 458 (citations omitted). This exception does not apply where, through the party's own failure to seek and obtain a stay, he or she has prevented an appellate court from reviewing the trial court's decision. *See Bunker Ltd. Partnership,* 820 F.2d at 311 (citing *In re Combined Metals Reduction Co.,* 557 F.2d 179, 191–92 (9th Cir.1977)). Situations of that type do not by their nature evade review. *Id.*

The "capable of repetition, yet evading review" exception does not apply here because Koppers did not take all steps necessary to perfect the appeal and preserve the status quo before the dispute became moot. Koppers did not move to stay execution of the warrant nor did it refuse to comply with the warrant thereby risking civil contempt, but preserving the issue for appellate review. *See B & B Chem. Co.,* 806 F.2d at 990 (citation omitted). In fact, Koppers did not move to quash the warrant until a full week after it had been fully executed. Moreover, even assuming Koppers acted diligently to preserve the issue pending appeal, the EPA represents that it has completed its air sampling and that no further tests are required. Therefore, there is no reasonable expectation the EPA will again seek to forcibly enter the Koppers facility to sample its air emissions. Accordingly, the exceptions to the mootness doctrine do not apply and hence we lack jurisdiction to consider this portion of Koppers' appeal.

## II. MOTION TO SUPPRESS

█ Koppers argues the district court erred in denying its motion to suppress the evidence obtained from the EPA air emis-

sion studies.[3] Koppers claims the EPA's entry for the ultimate purpose of regulating its air emissions is not authorized by CERCLA and therefore violated its fourth amendment right to be free from unreasonable search and seizures.

Koppers represents that the remedy selection process for its plant is still in its final stages, with the public comment period for the RI/FS recently closing. At this time, no particular response action has been selected and no reimbursement or enforcement actions have been filed against Koppers based on the air and water studies.[4] It would therefore be premature for this court to suppress the use of the air emissions data or review the legality of a hypothetical response action, such as air emissions control, at a time when the administrative process is incomplete and its effects have not been felt by Koppers in a "concrete way." *See Trustees for Alaska v. Hodel,* 806 F.2d 1378, 1381 (9th Cir.1986); *see also* 42 U.S.C. § 9613(h) (precludes judicial review of any challenges to the removal or remedial action selected under section 9604 until the EPA files suit for reimbursement of costs or to compel compliance with the selected response action).

AFFIRMED.

---

**3.** Koppers admits that suppression is no longer a feasible remedy because the EPA has already released the raw data obtained from the search. Any information obtained under section 9604(e) must be made available to the public unless it is confidential business information. 42 U.S.C. § 9604(e)(7). However, Koppers argues that we should preclude the EPA's further use of this information in assessing the purported health and environmental risks from Koppers' process source emissions and in developing controls or limits on those emissions.

**4.** Koppers' argument that the EPA is using CERCLA to circumvent the Clean Air Act is based on the assumption the EPA is sampling air emissions in order to "regulate" air emissions on a site-specific basis. Rather, the EPA sought access to the facility so that it could study the releases and, if necessary, develop a response which may or may not include additional emissions controls. It is thus completely speculative to say that the EPA will in fact attempt to limit or control Koppers' air emissions as part of its response action.