**TEXACO REFINING AND MARKETING INC., a Delaware corporation, Plaintiff,**

v.

**Barry P. DAVIS, Defendant. (Two Cases)**

**Civ. Nos. 93–481–FR, 93–595–FR.**

United States District Court, D. Oregon.

Oct. 21, 1993.

Robert E. Maloney, Jr., James L. Robart, Lane Powell Spears Lubersky, Portland, OR, for plaintiff.

David S. Shannon, Thomas P. Walsh, Shannon, Johnson & Bailey, P.C., Portland, OR, for defendant.

## OPINION

FRYE, Judge:

The matters before the court are the motions for summary judgment of Texaco Refining and Marketing, Inc. (Texaco) in its consolidated cases for declaratory judgment against Barry P. Davis (# 34 and # 74).

### UNDISPUTED FACTS

Texaco owns three retail motor fuels stations in the State of Oregon which, until May 23, 1993, had been leased to and operated by Davis. The stations are located in the cities of Salem, Eugene and Clackamas, Oregon.

Texaco sold TEXACO brand motor fuels to Davis pursuant to a separate sales agreement for each retail station. The sales agreements provide Texaco with rights of termination upon the happening of certain events. Under paragraph 22 of the sales agreements, Texaco has the right to terminate the franchises:

(i) If Purchaser fails to comply with any applicable laws, ordinances, regulations, judicial or administrative orders, or other legal requirements of all governmental authorities, federal, state, municipal or other authority, pertaining to this Agreement and the loading, unloading, storage, transportation and sale of petroleum products;

. . . .

(m) Upon any breach of any of the terms, covenants, warranties, agreements or conditions of this Agreement or any other agreement that may be in effect between the parties;

. . . .

(p) If Purchaser fails to comply with provisions of Paragraph 17, Hours of Operation.

Also provided in each sales agreement is the agreement of the parties that the right of the parties to terminate the sales agreement is both "reasonable and of material significance" to their franchise relationship. Sales Agreements, para. 12.

Texaco and Davis also entered into lease agreements for each station. Under paragraph 12(d) of each lease agreement, Texaco may terminate the lease agreement if Davis "fails to comply with any applicable law, ordinance, regulation, judicial or administrative order, or other legal requirement of any governmental authorities pertaining to this Lease." Paragraph 12 further provides that if Davis breaches any of the conditions allowing termination, then such a breach:

constitutes a failure by [Davis] to comply with a provision of this Lease which is both reasonable and of material significance to the relationship between [Texaco] and [Davis], and shall constitute good cause to cancel or terminate this Lease as the term "good cause" or any similar term is or may be used in any federal or state statute affecting the rights of the parties to terminate this Lease. [Texaco's] rights of termination for good cause as defined above shall not in any way be affected by any previous waiver, forbearance or course of dealing.

In the late fall of 1992, a controversy arose between the parties regarding the hours of operation at the three stations. Davis wanted to close the stations from sundown on Friday nights to sundown on Saturday nights for religious reasons. Texaco maintained that the sales agreements for each station required Davis to keep the stations open for twenty-four hours a day, every day of the year. Davis maintained that Texaco officials, by oral agreement, had promised to allow him to set his own hours of operation.

Beginning January 1, 1993, and each Friday and Saturday thereafter, Davis closed the stations from sundown Friday until sundown Saturday. Texaco objected to this practice, but the parties were unable to reach an agreement. Texaco then notified Davis in writing that he was in breach of his sales agreements. Davis persisted in closing the stations from sundown Friday until sundown Saturday.

On April 21, 1993, Texaco commenced an action against Davis, *Texaco Refining and Marketing, Inc. v. Davis*, Civil No. 93–481–FR ("the specific performance suit"), seeking a declaratory judgment that the closures of the stations by Davis were in breach of the sales agreements, and seeking an order of the court requiring Davis to keep the stations open in accordance with the agreements. Davis filed an answer containing counterclaims for damages for Texaco's alleged violations of 42 U.S.C. § 1983 and O.R.S. 650.200 *et seq.* Texaco now moves for summary judgment in Civil No. 93–481–FR.

On April 21, 1993, Texaco moved the court for a temporary restraining order restraining Davis from breaching the provisions in his franchise agreements relating to hours of operation. On April 26, 1993, this court granted Texaco's motion and temporarily restrained Davis from closing the stations. Davis defied the court's order and closed the stations from sundown Friday, April 30, 1993, until sundown Saturday, May 1, 1993, in observance of his religious beliefs.

After a hearing held on May 3, 1993, the court granted Texaco's motion for a preliminary injunction enjoining Davis from breaching the provisions of the parties' sales agreements relating to hours of operation. In granting Texaco's motion for a preliminary injunction, the court found: (1) the sales agreements for the stations in the cities of Eugene and Salem required Davis to keep the stations open twenty-four hours a day, seven days a week, and the sales agreement for the station in the City of Clackamas required Davis to keep the station open for twenty-four hours a day, Sunday through Friday; (2) Davis materially breached the sales agreements by closing the stations from sundown Friday through sundown Saturday; (3) the balance of the hardships favored Texaco, and Davis had no legally justifiable excuse for closing the stations; and (4) the motoring public, other Texaco dealers, and

Texaco have been and will continue to be irreparably harmed by the closings.

Davis continued to close the stations from sundown Friday until sundown Saturday, in violation of this court's preliminary injunction. By letter dated May 18, 1993, Texaco gave Davis ten days notice that his franchises would be terminated effective May 28, 1993 at 12:01 a.m. The notices set forth the grounds for termination and included a summary statement of Davis' rights under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801 *et seq.*

On May 19, 1993, Texaco commenced a second action against Davis, *Texaco Refining and Marketing, Inc. v. Davis,* Civil No. 93–595–FR ("the declaratory suit"), seeking a judicial declaration that Texaco justifiably terminated the franchises operated by Davis, as well as preliminary and permanent injunctive relief requiring Davis to surrender possession of the stations to Texaco. Davis filed an answer and counterclaim for preliminary and permanent injunctive relief enjoining Texaco from terminating the franchises operated by Davis.

On May 27, 1993, this court denied the motion filed by Davis for an order temporarily restraining Texaco from terminating the franchises. This court based its decision, in part, on Davis' violations of the injunctive orders of the court. After this court denied the motion for a temporary restraining order, and following negotiations between the parties, Davis surrendered possession of the stations to Texaco.

On June 14, 1993, this court granted the motion of Texaco in the specific performance suit for an order adjudging Davis to be in civil contempt for willfully disobeying the temporary restraining order.

## CONTENTIONS OF THE PARTIES

Texaco contends that it is entitled to summary judgment because it properly terminated its franchises with Davis under section 2802(b) of the PMPA because Davis violated this court's temporary restraining order and preliminary injunction. Davis contends that Texaco does not have subject matter jurisdic-tion and asserts several other procedural defenses.

Texaco contends that it is entitled to summary judgment because Davis has surrendered possession of the stations and Texaco has properly terminated the contracts. Davis asserts counterclaims based on 42 U.S.C. § 1983, O.R.S. 650.210(5), and O.R.S. 650.245. Texaco contends that the claim of Davis under 42 U.S.C. § 1983 must fail as a matter of law, and that the claims under the laws of the State of Oregon are moot.

## APPLICABLE STANDARD

■ Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

■ "The interpretation of a contract is a mixed question of law and fact." *Miller v. Safeco Title Ins. Co.,* 758 F.2d 364, 367 (9th Cir.1985). When the court's ruling rests on either an analysis of the language of the contract or an application of the principles of contract interpretation, the decision is one of law, and is therefore appropriate for summary judgment. *See id.*

## DISCUSSION

1. *The Declaratory Judgment Suit: The Termination of the Franchises Under the PMPA*

■ Texaco contends that it properly terminated its franchises with Davis under sec-

tion 2802(b)(2) of the PMPA. Section 2802 provides three grounds for termination of a franchisee's contract. The first two grounds are based on failures of the franchisee. Section 2802(b)(2)(A) applies where the franchisee has failed to comply with a provision of the franchise agreement that is both reasonable and of material significance to the franchise relationship. Section 2802(b)(2)(B) applies where the franchisee has failed to exert good faith efforts to carry out the provisions of the franchise. The third ground, section 2802(b)(2)(C), applies upon the occurrence of an event that is relevant to the franchise relationship and as a result of which termination of the franchise relationship is reasonable.

Each of the three subsections under section 2802(b)(2) provide an independent basis for termination where the franchisor apprises the franchisee of each statutory subsection it relies upon in its notification of termination. *Khorenian v. Union Oil Co.*, 761 F.2d 533, 535, n. 1 (9th Cir.1985). Texaco contends that it was independently justified in terminating Davis' franchises under each of the three subsections. The court will address these subsections and the defenses raised by Davis to the application of each subsection separately below.

A. *15 U.S.C. § 2802(b)(2)(A)*

Section 2802(b)(2)(A) provides:

(2) For purposes of this subsection, the following are grounds for termination of a franchise ... relationship:

· (A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship....

It is uncontroverted that Davis violated the temporary restraining order and preliminary injunction entered by this court. Texaco relies on nearly identical provisions of the sales and lease agreements which provide that Texaco may terminate its agreements if Davis "fails to comply with any ... judicial ... orders." Texaco contends that these provisions are "both reasonable and of material significance to the franchise relationship" under section 2802(b)(2)(A).

A provision is reasonable and material if it "is both conscionable—that is, not absurd, ridiculous, extreme, or excessive—and of real importance or great consequence to the franchise relationship." *Doebereiner v. Sohio Oil Co.*, 880 F.2d 329, 334 (11th Cir.1989). Section 2802(b)(2)(A) requires a basic compliance with the law; this expectation is not absurd, ridiculous, extreme or excessive. It is a behavior required of all citizens. The breach of a basic trust is material because it undermines the relationship of the parties. Franchisors are "entitled to reasonable expectations of compliance by the franchisee with the provisions of the franchise agreement." *Khorenian*, 761 F.2d at 536. Davis' disregard of this court's authority permanently impaired Texaco's expectation and trust that he would comply with the law and discharge the obligations required by the franchises in the future.

The injunctive orders of the court directly related to the hours of operation at the stations. Several courts have held that provisions providing for hours of operation are reasonable and material and that the failure of a franchisee to comply with such provisions justifies termination under section 2802(b)(2)(A). *See Doebereiner; Crown Central Petroleum Corp. v. Waldman*, 486 F.Supp. 759 (M.D.Pa.), *reversed and remanded on other grounds*, 634 F.2d 127 (3d Cir.1980), *on remand*, 515 F.Supp. 477 (M.D.Pa.1981), *aff'd*, 676 F.2d 684 (3d Cir. 1982).

Davis argues that termination was improper because his "mere noncompliance" with the terms of the franchise agreements concerning hours of operation does not amount to a "failure to comply" with a provision of the franchise under the PMPA. More specifically, Davis contends that (1) it was beyond his reasonable control to observe the injunctive orders of the court; and (2) the conduct of Texaco was unreasonable when it filed for injunctive relief knowing of his religious beliefs and thereby forcing him to disobey the orders of this court.

## ANALYSIS AND RULING

Violation of an order of this court is not "mere noncompliance" but a willful disregard

of the law for which Davis was held in civil contempt. Davis stated that he made a "painful choice" to violate the court orders in order to comply with his religious beliefs. However difficult the decision for Davis, he nonetheless chose to willfully violate a judicial order. Unlike the flood which was beyond the reasonable control of the defendant in *Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670 (3d Cir.1984), Davis acted of his own volition in choosing to disobey the orders of this court.

In denying Davis' motion for a temporary restraining order, this court noted that respect for the judicial process required Davis to comply with the temporary restraining order and preliminary injunction granted in favor of Texaco, even though he thought the orders were wrongly issued. The United States Supreme Court held that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*, 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980).

Davis claims that he did not make what he describes as a "painful choice" to violate the injunction of his own volition, but rather that Texaco forced him to disobey the order of the court by filing for injunctive relief. This argument is without merit. Texaco had a right to seek judicial redress under the terms of the franchise agreements and the PMPA.

The charges made by Davis regarding Texaco's bad faith are irrelevant because the terminations of the franchise agreements were based on his conduct alone. Several courts have held "assertions as to improper motive or bad faith by the franchisor to be irrelevant in evaluating the propriety of the termination or nonrenewal where the termination or nonrenewal is based on conduct by the franchisee." *Glenside West Corp. v. Exxon Co., U.S.A., Div. of Exxon Corp.*, 761 F.Supp. 1100, 1109 (D.N.J.1991) (citing *Smoot v. Mobil Oil Corp.*, 722 F.Supp. 849, 857 (D.Mass.1989)) and *Crown Central Petroleum Corp. v. Waldman*, 515 F.Supp. 477,

485 (M.D.Pa.1981), *aff'd without op.*, 676 F.2d 684 (3d Cir.1982).

By violating the orders of the court, Davis breached provisions of the franchise agreements that are reasonable and of material significance to the franchises under section 2802(b)(2)(A).

B. *15 U.S.C. § 2802(b)(2)(B)*

Section 2802(b)(2)(B) provides:

(2) For purposes of this subsection, the following are grounds for termination of a franchise ... relationship:

. . . .

(B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise, if—

(i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions.

Texaco contends that Davis failed to exert any effort whatsoever, much less a good faith effort, to carry out the provisions of his contracts with Texaco that relate to hours of operation. It is uncontroverted that Davis publicly declared his intent to violate the temporary restraining order and preliminary injunction entered by this court and that he carried out his intent.

Davis argues, nonetheless, that Texaco's termination of the franchises was improper under section 2802(b)(2)(B) because (1) Texaco has failed to show Davis' lack of good faith in light of his religious beliefs; (2) the cases cited by Texaco are distinguishable because here there is uncertainty regarding the terms of the franchise agreements and because Davis' religious beliefs are at issue; and (3) it is unclear whether the parties intended that a violation of any court order would trigger Texaco's right to terminate the franchises.

In *Mobil Oil Corp. v. Karbowski*, 879 F.2d 1052 (2d Cir.1989), the Second Circuit held that where the franchisee informed the franchisor that he had no intention of complying with a contract provision which required twenty-four hour a day, seven day a week operation, no factual dispute existed regard-

ing the franchisee's good faith under section 2802(b)(2)(B). Similarly, in *Lyons v. Mobil Oil Corp.*, 884 F.2d 1546, 1550 (2d Cir.1989), the Second Circuit affirmed summary judgment for the franchisor and stated: "Section 2802(b)(2)(B) requires not good faith in a franchisee's heart and mind while breaching the agreement but good faith in attempting to comply with it. Good faith in non-compliance is, therefore, simply not enough...."

This court does not question the conviction with which Davis holds his religious beliefs. But, as in *Karbowski* and *Lyons*, Davis' good faith in not complying with the orders of the court is not enough. The fact that Davis was motivated by religious beliefs when he violated the orders of the court is not sufficient to raise a question of fact.

The argument of Davis that the provision in his contracts relating to hours of operation is ambiguous and, therefore, he need not have complied with an order of the court relating to that provision is misguided. Davis claims that the relevance of the court's orders to the operations of the stations is dependent upon a finding that he breached the hours of operation section. This is a mistaken assumption. This court made a determination that Davis violated the provisions in the temporary restraining order and the preliminary injunction relating to hours of operation. However, the provisions relating to hours of operation are not what Texaco bases its right to terminate the contracts upon. The termination of the contracts by Texaco is based solely upon Davis' failure to comply with the orders of this court. Therefore, any ambiguity in the provisions in his contracts relating to hours of operation has no relevance at this time.

The final argument of Davis is that his failure to comply with the provisions relating to hours of operation upon which Texaco bases its claim does not apply to any judicial order, but only pertains to certain petroleum-related activities. Paragraph 22(i) of the sales agreements provides: "If Purchaser fails to comply with any applicable laws, ordinances, regulations, judicial or administrative orders, or other legal requirements of all governmental authorities ... *pertaining to*

*this Agreement...."* (Emphasis added). This final argument has no merit.

Davis has not demonstrated the existence of any material factual issues with respect to Texaco's breach of contract claim under section 2802(b)(2)(B).

### C. *15 U.S.C. § 2802(b)(2)(C)*

Section 2802(b)(2)(C) provides:

> (2) For purposes of this subsection, the following are grounds for termination of a franchise ... relationship:
>
> ....
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise ... relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—
>
> ....
>
> (ii) not more than 60 days prior to the date on which notification of termination ... is given, if less that 90 days notification is given pursuant to section 2804(b)(1) of this title.

Texaco argues that the failure of Davis to comply with the orders of the court is an event relevant to the franchise relationship and for which termination was reasonable. Davis argues that termination based on section 2802(b)(2)(C) is improper because violation of a court order is not an enumerated "event" under this section, and that it is not similar to an enumerated "event."

Section 2802(c) contains a non-exclusive list of relevant events justifying termination. *Russo v. Texaco, Inc.*, 808 F.2d 221, 225 (2d Cir.1986). This illustrative list includes the "knowing failure of the franchisee to comply with Federal, State, or local laws or regulations relevant to the operation of the marketing premises." 15 U.S.C. § 2802(c)(11). In *Russo*, the court held that the occurrence of an event that is similar to an enumerated event may support termination under section 2802(c). *Russo*, 808 F.2d at 225 (quoting S.Rep. No. 731, 95th Cong., 2d Sess. 38,

*reprinted in* 1978 U.S.Code Cong. & Ad. News at 896).

The court finds that Davis' violations of the temporary restraining order and the preliminary injunction are, at a minimum, similar to the "failure to comply with Federal, State, or local laws" enumerated by the statute. Davis has not raised an issue of material fact with regard to Texaco's section 2802(b)(2)(C) claim.

2. *Defense of Lack of Subject Matter Jurisdiction*

Davis contends that this court lacks subject matter jurisdiction under the PMPA to adjudicate Texaco's claim for declaratory relief, citing *Winks v. Feeney Oil Co.*, 731 F.Supp. 322 (C.D.Ill.1990); *CIA. Petrolera Caribe, Inc. v. De Jesus*, 671 F.Supp. 884 (D.P.R.1987). Davis argues that the language of the PMPA, the legislative history, and the relevant case law support the conclusion that this court lacks jurisdiction.

■■■ It is well established that federal question jurisdiction exists in declaratory judgment actions where the plaintiff's action anticipates the defendant's federal question claims. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1384 (9th Cir.1988), *cert. denied, Miller v. Morongo Band of Mission Indians*, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989) (citing *Bell & Beckwith v. United States*, 766 F.2d 910 (6th Cir.1985)), *see also* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2767 (2d ed. 1983). The Ninth Circuit stated in *Morongo:*

> In an interpleader action, as in an action for declaratory relief the plaintiff seeks an adjudication of claims that the defendants threaten to assert against the plaintiff. Whether the action is styled as one for

interpleader or for declaratory relief, the cause of action litigated is not that of the plaintiff but that of the defendants. Federal jurisdiction over both types of actions is proper if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law.

858 F.2d at 1384 (citations omitted).

The two cases upon which Davis relies, *Winks* and *CIA. Petrolera Caribe, Inc.*, interpret the wording of section 2805(a) of the PMPA to provide a cause of action exclusive to the franchisee alone. Section 2805(a) provides that "[i]f a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor." While the PMPA does not expressly provide that the franchisor may bring suit, section 2805(a) does not contain language prohibiting the franchisor from maintaining a civil action against the franchisee. The cases cited by Davis focus narrowly on this language. The wealth of authority is contrary. Courts in numerous other cases have recognized federal question jurisdiction in declaratory judgment actions filed by franchisors seeking a determination that they properly terminated a franchisee under the PMPA.[1] This court will follow the weight of authority on this issue.

3. *Procedural Defenses*

Davis raises the following procedural defenses which he argues preclude the court from granting summary judgment on Texaco's claim for declaratory relief and the counterclaim of Davis for injunctive relief: (1) Texaco failed to reply to his counterclaim; (2) Texaco's motion is premature and should be denied until discovery is completed; (3) a material question of fact exists regarding the propriety of Texaco's notice of termination;

---

1. *See Chevron U.S.A., Inc. v. Finn*, 851 F.2d 1227, 1230–31 (9th Cir.1988), *cert. denied, Finn v. Chevron U.S.A., Inc.*, 489 U.S. 1054, 109 S.Ct. 1315, 103 L.Ed.2d 584 (1989); *Mobil Oil Corp. v. Karbowski*, 879 F.2d 1052 (2d Cir.1989); *Amoco Oil Co. v. Johnstone*, 856 F.2d 967 (7th Cir.1988), *cert. denied, Johnstone v. Amoco Oil Co.*, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989); *Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670, 671 n. 3 (3d Cir.1984); *Murphy Oil USA, Inc. v. Hauser*, 820 F.Supp. 437 (D.Minn.1993);

*Shell Oil Co. v. Hillary Farmer Serv. Station, Inc.*, 739 F.Supp. 749, 755 (E.D.N.Y.1990); *Marathon Petroleum Co. v. Pendleton*, 689 F.Supp. 739, 741–42 (N.D.Ohio 1988), *aff'd*, 889 F.2d 1509, 1513 (6th Cir.1989); *Mobil Oil Corp. v. Shah*, 671 F.Supp. 503 (N.D.Ill.1987); *Mobil Oil Corp. v. Vachon*, 580 F.Supp. 153 (D.Mass.1983); *Shell Oil Co. v. Kozub*, 574 F.Supp. 114 (N.D.Ohio 1983); *Exxon Corp. v. Miro*, 555 F.Supp. 234 (C.D.Cal.1983).

and (4) a material question of fact exists as to whether Texaco provided Davis with a notice of termination at the earliest date reasonably practicable. These defenses will be addressed separately.

First, Davis is mistaken in his claim that Texaco failed to answer his counterclaim. Texaco served and filed its answer to Davis' counterclaim on June 15, 1993.

Second, Davis argues that discovery is necessary to determine the nature of the agreements of the parties regarding the contractual provisions for hours of operation. The court need not reach the issue of whether Davis breached the provisions relating to hours of operation in this action because Texaco bases its right of termination on the failure of Davis to comply with a judicial order relating to the contracts.

■ Third, Davis argues that section 2804 required Texaco to give him 90 days notice of termination, and that less than 90 days notice may be given only where a franchisee has committed serious breaches of the franchise agreement. He argues that whether a notice given less than 90 days prior to termination is a serious default is a question of fact to be decided by a jury, citing *Union Oil Co. v. O'Reily,* 226 Cal.App.3d 199, 276 Cal.Rptr. 483 (1990), *cert. denied,* — U.S. —, 112 S.Ct. 75, 116 L.Ed.2d 48 (1991), and *Naff v. Standard Oil Co.,* 527 F.Supp. 160 (S.D.Ohio 1981).

■ The court need not reach the factual issue of whether Davis' breach is a "serious default" justifying less than 90 days notice because less than 90 days notice is also permissible under section 2804(b)(1)(A) if it is reasonable under the circumstances. *Abujudeh v. Mobil Oil Corp.,* 841 F.2d 310 (9th Cir.1988), and *Wisser Co. v. Mobil Oil Corp.,* 730 F.2d 54 (2d Cir.1984). The reasonableness of providing less than 90 days notice of termination, like any question of fact, may be decided as a matter of law where reasonable minds can reach but one conclusion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Several courts have determined as a matter of law that substantially less than 90 days notice was reasonable

under the circumstances. *See, e.g., Abujudeh, supra,* (12 days notice); *Marathon Petroleum Co. v. Pendleton,* 889 F.2d 1509, 1513 (6th Cir.1989) (10 days notice); *Wisser, supra,* 730 F.2d at 60 (immediate termination); and *Shell Oil Co. v. Wentworth,* 822 F.Supp. 878, 883 (D.Conn.1993) (7 days notice).

This court concludes that Texaco acted reasonably in providing less than 90 days notice to Davis. Davis declared in open court that he would not comply with the orders of the court and was held in civil contempt. Thus, had Texaco provided the full 90 days notice, the irreparable harm to the motoring public would have continued throughout the notice period.

■ In his last procedural defense, Davis argues that Texaco did not provide him with a notice of termination on the earliest date practicable. Davis asserts that January 1, 1993, when he first closed the stations contrary to the terms of his contracts with Texaco, was the earliest date reasonably practicable for Texaco to provide him with a notice of termination. As previously discussed at length, the pivotal issue giving rise to the termination of Davis' franchises was his failure to comply with the orders of the court. Texaco obtained the temporary restraining order and the preliminary injunction and gave Davis a reasonable opportunity to comply with the orders of the court. Twenty-two days after the entry of the temporary restraining order and fifteen days after the entry of the preliminary injunction, Texaco issued its notice of termination. The court concludes that Texaco waited a reasonable period of time to determine Davis' non-compliance before terminating his franchises.

4. *The Specific Performance Suit: Davis' Counterclaims*

A. *Counterclaim Based on 42 U.S.C. § 1983*

Texaco argues that summary judgment is appropriate on one civil rights counterclaim filed by Davis because, as a matter of law, Davis has not stated a viable claim under 42 U.S.C. § 1983; and even if he had, the claim is moot. The basis of Davis' claim under 42

U.S.C. § 1983 is that Texaco used the enforcement mechanisms of the court to compel specific performance of the franchise agreements in order to purposefully infringe on Davis' right of free exercise of religion and his right to be free from involuntary servitude. Davis alleges that he has suffered damages as a result of having to make the decision not to comply with the injunctive order of the court.

■ To state a claim under section 1983, Davis must prove both (1) that he was deprived of a right secured by the constitution or the laws of the United States, and (2) that Texaco acted under color of state law. *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

■ Davis contends that Texaco acted under color of state law by using the enforcement mechanisms of the federal courts. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982), the Court held "that the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *See also District of Columbia v. Carter*, 409 U.S. 418, 424–25, 93 S.Ct. 602, 606–07, 34 L.Ed.2d 613 (1973). Ninth Circuit decisions have held that federal action allegedly causing the deprivation of a federal right is insufficient under 42 U.S.C. § 1983. *Daly–Murphy v. Winston*, 820 F.2d 1470, 1477 (9th Cir.), *amended*, 837 F.2d 348 (9th Cir.1987). A federal court may apply a state law, but it does not act under color of state law. *Wheeldin v. Wheeler*, 373 U.S. 647, 650 n. 2, 83 S.Ct. 1441, 1444 n. 2, 10 L.Ed.2d 605 (1963).

Davis cites *Cohen v. Cowles Media Co.*, — U.S. —, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991) to support his argument. His reliance on this case is misplaced. As the *Cohen* Court noted: "Our cases teach that the application of state rules of law in state courts ... constitutes 'state action' under the Fourteenth Amendment." *Id.*, — U.S. at —, 111 S.Ct. at 2517 (emphasis added). Davis also cites *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). *Edmonson* did not have a claim under section 1983, but an equal protection claim under the Fifth Amendment. Under the Fifth Amendment, the "state actor" is the federal government; under the fourteenth amendment the "state actor" is state government. *Carter, supra*, 409 U.S. at 423–24, 93 S.Ct. at 605–06.

The "acting under color of state law" requirement is satisfied only when "the state courts, supported by the full panoply of state power," are used to deprive an individual of constitutional rights. *Shelley v. Kraemer*, 334 U.S. 1, 19, 68 S.Ct. 836, 845, 92 L.Ed. 1161 (1948). Texaco did not pursue its claim in state court. No state action was involved in this case. The section 1983 claim of Davis fails as a matter of law.

The court does not need to reach the issue of mootness because Davis has not satisfied the *prima facie* requirements under section 1983.

B. *The Counterclaims of Davis Based on O.R.S. 650.210(5) and O.R.S. 650.245*

■ Davis has alleged two counterclaims to the specific performance suit based on the laws of the State of Oregon. O.R.S. 650.210 provides, in relevant part:

> It shall be unlawful and a violation of ORS 650.200 to 650.250 for any franchisor to:
>
> . . . .
>
> (5) Impose on a franchisee by contract, rule or regulation, whether written or oral, any standard of conduct unless the person so doing can sustain the burden of proving the standard of conduct to be reasonable.

O.R.S. 650.245 provides:

> **Principle of good faith.** Without limiting the other provisions of ORS 650.200 to 650.250, the principle of good faith shall govern the relationship and dealings of the parties with each other.

Texaco contends that Davis' counterclaims under O.R.S. 650.210(5) and O.R.S. 650.245 are moot because Texaco properly terminated the contracts based on Davis' violation of the orders of the court, and Davis has surrendered the facilities to Texaco. Texaco is no longer attempting to enforce the provisions relating to hours of operation. Davis argues that the counterclaims are not moot

because he has viable damage claims against Texaco.

■ A claim is moot where there no longer exists a present controversy as to which effective relief can be granted. *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir.1984). Because Texaco properly terminated Davis under the PMPA and because Davis no longer operates the stations, there can be no controversy in this case as to the provisions relating to the hours of operation. This court cannot fashion a remedy for Davis. Therefore, the claims of Davis for any alleged violations of the statutes after termination on May 28, 1993 are moot.

■ Davis argues that his claims are not moot. He relies upon the doctrine of collateral legal consequences, citing *Koppers Indus. v. United States EPA*, 902 F.2d 756, 758 (9th Cir.1990). The doctrine of collateral legal consequences is an exception to the rule that a court will not hear an appeal that is moot. *Id.* However, the doctrine of collateral legal consequences applies only to determinations by appellate courts as to when to hear claims.

■ Davis further contends that his counterclaims cannot be adjudged moot prior to a determination as to the terms of the franchise agreements and the appropriateness of the preliminary injunction. The counterclaims filed by Davis under the laws of the State of Oregon do not arise from and are not dependent on whether the preliminary injunction is overturned on appeal. As discussed above, Texaco properly terminated the franchises because Davis violated the orders of this court. The fact that the orders can be overturned on appeal is irrelevant.

Davis argues that even if his claims are moot as to the pre-termination period, his claims as to the post-termination period should not be dismissed on a motion for summary judgment because the issues relating to the damages caused by the terminations must be resolved. It is undisputed that Davis did not comply with Texaco's demands that he operate the stations twenty-four hours a day, seven days a week as required by the contracts. Therefore, Davis

cannot point to any damages resulting from Texaco's conduct.

Nonetheless, Davis claims that he is entitled to damages for the emotional distress arising from his decision to refuse to comply with the orders of the court. Davis did not plead a counterclaim based on intentional infliction of emotional distress; therefore, he cannot be entitled to damages under that doctrine.

■ Davis also claims that he suffered damages relating to the bond required for the preliminary injunction. Davis would only have a claim against the bond if the Ninth Circuit or the Supreme Court determined that the preliminary injunction was wrongly issued, and that Davis sustained damages as a result of his compliance with the injunction. *See* Fed.R.Civ.P. 65(c); *Amalgamated Transit Union, etc. v. Greyhound Lines, Inc.*, 529 F.2d 1073, 1079 (9th Cir.), *vacated on other grounds*, 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (9176), *on remand*, 550 F.2d 1237 (9th Cir.1977). Since Davis did not comply with the injunction, he has no claim against the bond.

## CONCLUSION

Texaco's motion for summary judgment in the declaratory suit (# 34) is granted.

Texaco's action for specific performance of the provision of the franchise agreements relating to hours of operation is moot because Davis no longer operates the stations, and Texaco properly terminated the franchise agreements. Based on the reasons discussed above, Davis' counterclaims to the action for specific performance based on 42 U.S.C. § 1983, O.R.S. 650.210(5), and O.R.S. 650.245 are deemed moot. Therefore, Texaco's motion for summary judgment in the specific performance suit (# 74) is granted.

## JUDGMENT

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of Texaco Refining and Marketing, Inc. and against Barry P. Davis.