Soheil RAZAVI, Appellant,

v.

AMOCO OIL COMPANY, a Maryland Corporation, Appellee.

No. 93–7150.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1994.

Decided Dec. 16, 1994.

Rehearing Denied Jan. 20, 1995.*

Skip Short, New York City, argued the cause for appellant. With him on the briefs was Harry C. Storm, Bethesda, MD.

Daniel F. Attridge, Washington, DC, argued the cause for appellee. With him on the brief was Christopher Landau, Washington, DC.

* Chief Judge Edwards would grant the petition for rehearing of appellee.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Soheil Razavi appeals the district court's order granting summary judgment in favor of Amoco Oil Company in Razavi's suit under the Petroleum Marketing Practices Act of 1978, 15 U.S.C. §§ 2801–2806. In June 1990, Amoco granted Razavi a "trial" franchise for the Amoco service station located at 500 New Jersey Avenue, in northwest Washington D.C. Pursuant to the agreement, the franchise term began on July 1, 1990, and expired on June 30, 1991. Before executing the franchise agreement, Amoco notified Razavi that it was negotiating a sale of its New Jersey Avenue property. Razavi requested Amoco to grant him a right of first refusal to purchase the property if Amoco entered into a sales contract—a right not required by the Act. 15 U.S.C. §§ 2802(b)(3)(D) & 2803(b)(1)(D). On May 30, 1991, Amoco contracted to sell the premises to 500NJ Associates and expressly conditioned the contract on Razavi's right of first refusal. In contemplation of the sale, on June 21, 1991, nine days before the franchise's expiration date, Amoco informed Razavi that it would not renew the franchise. On July 2, 1991, Amoco notified Razavi of his right to purchase the station on terms identical to those in Amoco's contract with 500NJ Associates. Razavi did not exercise his right of first refusal. On September 19, 1991, he filed suit in district court, claiming that Amoco "nonrenewed"[1] his franchise agreement in violation of the Act. Pending the outcome of this litigation, Amoco agreed to "maintain the status quo" and allow Razavi to continue operating the station. Today, more than three years after the original expiration date of Razavi's trial franchise, Razavi continues to operate the station.

 The Petroleum Marketing Practices Act regulates the relationship between the franchisors and franchisees of gasoline service stations. In an attempt to balance the interests of the parties, the Act grants franchisees a measure of protection against franchisors, *Lewis v. Exxon Corp.,* 716 F.2d 1398, 1399 (D.C.Cir.1983), limiting the power of petroleum companies to terminate or nonrenew dealer franchises. 15 U.S.C. § 2802(a). The Act distinguishes between a "trial" franchise and a regular franchise, 15 U.S.C. §§ 2802(a) & 2803(a)(1), (c)(1), a distinction that affects the extent of a franchisee's statutory rights. If Razavi's franchise remained only a "trial" franchise after June 30, 1991, Amoco could have nonrenewed it for any reason, provided Amoco notified Razavi of the nonrenewal not less than ninety days prior to the date on which the nonrenewal was to take effect. 15 U.S.C. §§ 2803(a) & 2804.

Apparently because Amoco gave Razavi notice only nine days before the expiration date provided in the franchise agreement, the company extended the franchise until September 21, 1991—ninety-two days after its nonrenewal notice to Razavi. 15 U.S.C. § 2804(a)(2). The Act defines a "trial" franchise partly in reference to its duration—"an initial term of which is for a period of not more than 1 year." 15 U.S.C. § 2803(b)(1). Razavi started out with a trial franchise. He claims he wound up with something more when Amoco gave him notice of its intention to nonrenew less than ninety days before his trial franchise expired, and when Amoco then extended his franchise beyond one year. If Razavi is right, if he no longer had a trial franchise after June 30, 1991, Amoco had to shoulder additional statutory obligations, including the duty to comply with 15 U.S.C. § 2802(b)(3)(D)(iii). This provision permits a franchisor to terminate or nonrenew a franchise agreement if the franchisor, "in good faith and in the normal course of business," contracts to sell the premises—so long as the franchise has, or the franchisee was offered, a term of three years or longer. In order to exercise this option, the franchisor must offer the franchisee a right of first refusal for a

---

1. "Nonrenewal" is a term defined in the Act as "a failure to reinstate, continue, or extend the franchise relationship." 15 U.S.C. § 2801(14).

period of at least forty-five days to purchase the franchisor's interest in the premises. 15 U.S.C. § 2802(b)(3)(D)(iii)(II). Amoco could not exercise this option, according to Razavi, because it never gave or offered him a three-year term and because the right of first refusal Amoco granted him was inadequate.

We do not reach the merits of Razavi's claims. The passage of time has rendered inconsequential whether Amoco's original notice of June 21, 1991, effectively ended Razavi's franchise, as Amoco argues, relying on *Freeman v. BP Oil, Inc.*, 855 F.2d 801, 802–04 (11th Cir.1988); or whether Razavi is right that Amoco's extending his franchise to September 21, 1991, removed his "trial" status and entitled him to a franchise of at least three years' duration before Amoco could sell the premises pursuant to section 2802. By the time the case reached us, Razavi had in fact been operating the station for more than three years. He thus has had the three-year term he sought through this litigation, although he realized his objective not as a result of a judicial ruling but because Amoco agreed to "maintain the status quo" and allow Razavi to remain on the premises "for the time being," which we understand to mean during the course of the litigation.[2] The same result would obtain if we treated what has occurred between Amoco and Razavi during the last three years as having created a franchise with no stated term of duration. *See* 15 U.S.C. § 2801(14)(B).

■ There is still the question of the adequacy of the right of first refusal Amoco originally granted Razavi. Here too it appears that any decision we rendered would have no current consequences. Amoco's original contract for sale with 500NJ Associates required the parties to close no later than November 30, 1992. We are not informed whether the contract has lapsed or whether the parties have amended the closing date and other terms. In any event, if Amoco were to sell the premises now or in the future, it would have to do so pursuant to a contract that had terms other than those in the original. Any ruling we made about the right of first refusal offered to Razavi with respect to the original sales agreement would therefore be advisory only.

Accordingly, the judgment of the district court is vacated. In the exercise of our remedial discretion (*see United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *Chamber of Commerce v. Department of Energy*, 627 F.2d 289, 291 (D.C.Cir.1980)), informed by the Act's notice and right-of-first refusal provisions, we hold that Amoco may now nonrenew Razavi's franchise by granting Razavi a new "right of first refusal of at least 45–days duration of an offer, made by another, to purchase [Amoco's] interest in ... [the] premises" (15 U.S.C. § 2802(b)(3)(D)(iii)(II)), and by giving him not less than ninety days' notice of Amoco's intent to terminate or nonrenew his franchise. 15 U.S.C. § 2804(a). Each party shall bear its own costs and attorney's fees.

*So ordered.*

---

2. In the prayer for relief in his complaint, Razavi sought not only an injunction but also "[d]amages in such amount as may be appropriate." The complaint did not elaborate and, so far as appears, Razavi never alleged that he suffered any actual damages. *See* 15 U.S.C. § 2805(d)(1)(A). In moving for partial summary judgment, Razavi sought only an order that Amoco had renewed his franchise for a term to be determined by the court in later proceedings. Given the nature of his cause of action, any harm Razavi might have suffered from Amoco's alleged statutory violations dissipated when, in effect, the company's forbearance during the litigation gave Razavi the most he could have expected—a franchise of at least three years' duration.