11-4563-cv
*Jimico Enterprises, Inc., et al. v. Lehigh Gas Corp.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: January 31, 2013                          Decided: February 20, 2013)

Docket No. 11-4563-cv

_____

JIMICO ENTERPRISES, INC.,

*Plaintiff-Appellee,*

BROWNSON ENTERPRISES, INC.,

*Plaintiff-Counter-Defendant-Appellee,*

PETER BROWNSON,

*Counter-Defendant-Appellee,*

v.

LEHIGH GAS CORPORATION,

*Defendant-Appellant.*

_____

Before: WALKER, CABRANES, and WESLEY, Circuit Judges.

Defendant Lehigh Gas Corporation appeals from a judgment of the United States District

Court for the Northern District of New York (Glenn T. Suddaby, *Judge*) awarding damages to

plaintiffs, Jimico Enterprises, Inc. and Brownson Enterprises, Inc., under the Petroleum Marketing

Practices Act ("PMPA" or "Act"), 15 U.S.C. §§ 2801–2841. This appeal presents the question of whether a franchisor may be held liable under the Act for failing to provide notice to a "trial franchisee" prior to termination of its franchise. We hold that the PMPA provides a right of action to a trial franchisee when a franchisor fails properly to notify it prior to terminating the franchise. Additionally, we conclude that the District Court did not abuse its discretion in awarding plaintiffs compensatory damages, punitive damages, attorney's fees and costs, and interest.

Affirmed.

URS BRODERICK FURRER, Harriton & Furrer, LLP, Armonk, NY, *for Appellant*.

RICHARD D. SCHWARTZ (Kendall S. Zylstra, *on the brief*), Faruqi & Faruqi, LLP, Jenkintown, PA; Christopher Massaroni, McNamee, Lochner, Titus & Williams, P.C., Albany, NY, *for Appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant Lehigh Gas Corporation ("Lehigh") appeals from a summary judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Judge*) awarding damages to plaintiffs, Jimico Enterprises, Inc. ("Jimico") and Brownson Enterprises, Inc. ("Brownson," jointly "plaintiffs"), under the Petroleum Marketing Practices Act ("PMPA" or "Act"), 15 U.S.C. §§ 2801–2841. Lehigh contends (1) that the PMPA does not provide a right of action to "trial franchisees" for violations of the Act's notice provisions, *id.* § 2804; and (2) that, if the Act does provide such a right of action, the District Court erred in awarding compensatory damages, punitive damages, attorney's fees and costs, and pre- and post-judgment interest to plaintiffs. As we conclude (1) that the PMPA does provide a right of action, both to "full" and "trial" franchisees, when a franchisor fails to comply with the Act's notice provisions, and (2) that the District Court properly awarded damages, fees, costs, and interest to plaintiffs, we affirm the amended judgment of the District Court.

2

**BACKGROUND**

As the Supreme Court has explained, "[p]etroleum refiners and distributors supply motor fuel to the public through service stations that often are operated by independent franchisees. In the typical franchise arrangement, the franchisor leases the service-station premises to the franchisee, grants the franchisee the right to use the franchisor's trademark, and agrees to sell motor fuel to the franchisee for resale." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, 130 S. Ct. 1251, 1255 (2010). This suit concerns the rights a franchisee[1] has under the PMPA against a franchisor[2] that summarily terminates the franchise.[3] The essential, and undisputed, facts are as follows.

Prior to April 2007, plaintiffs operated five gas stations along the Governor Thomas E. Dewey Thruway ("Thruway"), more commonly known as the New York State Thruway, which extends from New York City, through Albany, Syracuse, and Buffalo, to the Pennsylvania state line. Jimico operated three stations—one on each side of the Thruway in Angola, and one in Seneca. Brownson operated two stations—one on each side of the Thruway in New Baltimore. In May 2006, the New York State Thruway Authority awarded Lehigh, an independent distributor of ExxonMobil gasoline, a contract to serve as franchisor to thirteen stations, including those of Jimico and Brownson.

---

[1] The Act defines "franchisee" as "a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(4).

[2] The Act defines a "franchisor" as "a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." *Id.* § 2801(3).

[3] The Act defines a "franchise" as "any contract . . . **(i)** between a refiner and a distributor, **(ii)** between a refiner and a retailer, **(iii)** between a distributor and another distributor, or **(iv)** between a distributor and a retailer, under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use." *Id.* § 2801(1)(A).

3

On June 1, 2006, Jimico and Brownson, as franchisees, entered into franchise relationships[4] with Lehigh, as franchisor. As the District Court correctly found, the contracts as to each of the five stations were "trial franchises," within the meaning of the PMPA, because Jimico and Brownson previously had not been party to a franchise with Lehigh; the initial terms of the contracts were for a period of less than one year; and the contracts included the necessary language, including a clear statement that the franchises were "trial franchises." 15 U.S.C. § 2803(b)(1).[5] Between July 28, 2006 and April 1, 2007, without any notice, Lehigh terminated[6] its franchises with Jimico and Brownson—first with Jimico's two Angola stations, then with Brownson's two New Baltimore stations, and finally with Jimico's Seneca station.

On May 31, 2007, plaintiffs filed this suit, claiming, *inter alia*, that Lehigh violated the PMPA when it terminated their franchises without any notice. The District Court granted plaintiffs' motion for summary judgment on July 27, 2010, holding that Lehigh had failed to give adequate notice of termination under the PMPA. On October 14, 2010, after an evidentiary hearing on damages, the

---

[4] The Act defines a "franchise relationship" as "the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise." *Id.* § 2801(2).

[5] In full, the Act defines a "trial franchise" as any franchise:

**(A)** which is entered into on or after June 19, 1978;

**(B)** the franchisee of which has not previously been a party to a franchise with the franchisor;

**(C)** the initial term of which is for a period of not more than 1 year; and

**(D)** which is in writing and states clearly and conspicuously—

　　**(i)** that the franchise is a trial franchise;

　　**(ii)** the duration of the initial term of the franchise;

　　**(iii)** that the franchisor may fail to renew the franchise relationship at the conclusion of the initial term stated in the franchise by notifying the franchisee, in accordance with the provisions of section 2804 of this title, of the franchisor's intention not to renew the franchise relationship; and

　　**(iv)** that the provisions of section 2802 of this title, limiting the right of a franchisor to fail to renew a franchise relationship, are not applicable to such trial franchise.

*Id.* § 2803(b)(1).

[6] The Act does not define the term "terminate," except insofar as it specifies that "[t]he term 'termination' includes cancellation." *Id.* § 2801(17). Nonetheless, the Supreme Court has defined "terminate" in this context as to "put an end to" or "annul or destroy." *Mac's Shell Serv.*, 130 S. Ct. at 1257.

4

District Court awarded plaintiffs a total of $141,892.79 in compensatory damages and $30,000 in punitive damages. The District Court subsequently awarded attorney's fees and costs, as well as pre- and post-judgment interest to plaintiffs, and entered judgment.[7] On October 14, 2011, the District Court entered an amended judgment, correcting its previous calculation error regarding prejudgment interest. Lehigh now appeals the District Court's amended judgment.

## DISCUSSION

Lehigh argues that the District Court erred in awarding damages, attorney's fees and costs, and pre- and post-judgment interest to plaintiffs on two grounds. First, Lehigh contends that the PMPA provides no right of action for inadequate notice of termination. Second, Lehigh urges that, even if the PMPA does authorize such an action, the District Court's damages, fees, and costs awards were inappropriate in these circumstances.

We review an order granting summary judgment *de novo* and "resolv[e] all ambiguities and draw[ ] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation marks omitted). We review the District Court's determination of the size of a damages award for clear error, *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 191 (2d Cir. 2011), and its award of attorney's fees for abuse of discretion, *Barbour v. City of White Plains*, 700 F.3d 631, 634 (2d Cir. 2012); *see also In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (noting that a district court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions" (internal citation and quotation marks omitted)).

---

[7] The District Court also granted summary judgment in favor of Lehigh on its counterclaim for breach of contract against Brownson and its president, Peter Brownson. Brownson did not appeal the District Court's judgment.

**A. Violation of the PMPA's Notice Provisions**

Lehigh contends that the plain language of the PMPA does not permit a right of action for violations of the notice provisions contained in § 2804. As with any question of statutory interpretation, we begin by examining the text of the statute. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "In interpreting the statute at issue, we consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (alteration and internal quotation marks omitted).

We previously have observed that "Congress enacted the PMPA to establish minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel." *Mobil Oil Corp. v. Karbowski*, 879 F.2d 1052, 1055 (2d Cir. 1989) (internal quotation marks omitted). Although the PMPA addresses several concerns identified by Congress in the marketing of gasoline, "its paramount objective is to redress disparities in bargaining power and to prevent the ensuing arbitrary termination" by franchisors. *Darling v. Mobil Oil Corp.*, 864 F.2d 981, 984 (2d Cir. 1989); *see also Mac's Shell Serv.*, 130 S. Ct. at 1255 ("[T]he PMPA was a response to widespread concern over increasing numbers of allegedly unfair franchise terminations and nonrenewals in the petroleum industry."); *Mobil Oil Corp.*, 879 F.2d at 1055 ("The overriding purpose of the PMPA is to provide protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." (internal quotation marks omitted)).

In order to prevent arbitrary action by franchisors, the PMPA sets out precise notice requirements, which must be followed prior to any termination. In particular, unless it would be

6

unreasonable, a franchisor must provide notice at least ninety days prior to terminating a franchise. 15 U.S.C. § 2804(a). Such notification (1) must be in writing, (2) must be posted by certified mail or personally delivered to the franchisee, and (3) must contain a statement of the reasons for termination, the date of its effect, and a summary of the provisions of the PMPA. *Id.* § 2804(c). Even in circumstances where it would not be reasonable for a franchisor to notify a franchisee ninety days prior to termination, the franchisor must provide notice at the earliest "reasonably practicable" date. *Id.* § 2804(b).[8]

---

[8] In full, § 2804 provides:

(a) General requirements applicable to franchisor

Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—

> **(1)** in the manner described in subsection (c) of this section; and

> **(2)** except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

(b) Additional requirements applicable to franchisor

> **(1)** In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, as required by subsection (a)(2) of this section—

>> **(A)** such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable; and

>> **(B)** in the case of leased marketing premises, such franchisor—

>>> **(i)** may not establish a new franchise relationship with respect to such premises before the expiration of the 30-day period which begins—

>>>> **(I)** on the date notification was posted or personally delivered, or

>>>> **(II)** if later, on the date on which such termination or nonrenewal takes effect; and

>>> **(ii)** may, if permitted to do so by the franchise agreement, repossess such premises and, in circumstances under which it would be reasonable to do so, operate such premises through employees or agents.

> **(2)** In the case of any termination of any franchise or any nonrenewal of any franchise relationship pursuant to the provisions of section 2802(b)(2)(E) of this title or section 2803(c)(2) of this title, the franchisor shall—

>> **(A)** furnish notification to the franchisee not less than 180 days prior to the date on which such termination or nonrenewal takes effect; and

7

Section 2805 supplies a private right of action for enforcement of the PMPA's provisions. Under that section, "[i]f a franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title, the franchisee may maintain a civil action against such franchisor." *Id.* § 2805(a). Lehigh argues that, because § 2805(a) does not specifically identify § 2804—the Act's notification provision—in the list of sections giving rise to a right of action against a franchisor, plaintiffs have no right of action against Lehigh for its failure to comply with the PMPA's notification requirements.

Lehigh's argument, however, is contradicted by a plain reading of the statute and by controlling precedent. Indeed, although § 2805 does not specifically identify § 2804 in the list of sections giving rise to a right of action, it does provide a private right of action to enforce § 2802,

---

   **(B)** promptly provide a copy of such notification, together with a plan describing the schedule and conditions under which the franchisor will withdraw from the marketing of motor fuel through retail outlets in the relevant geographic area, to the Governor of each State which contains a portion of such area.

(c) Manner and form of notification

Notification under this section—

   **(1)** shall be in writing;

   **(2)** shall be posted by certified mail or personally delivered to the franchisee; and

   **(3)** shall contain—

      **(A)** a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;

      **(B)** the date on which such termination or nonrenewal takes effect; and

      **(C)** the summary statement prepared under subsection (d) of this section.

(d) Preparation, publication, etc., of statutory summaries

   **(1)** Not later than 30 days after June 19, 1978, the Secretary of Energy shall prepare and publish in the Federal Register a simple and concise summary of the provisions of this subchapter, including a statement of the respective responsibilities of, and the remedies and relief available to, any franchisor and franchisee under this subchapter.

   **(2)** In the case of summaries required to be furnished under the provisions of section 2802(b)(2)(D) of this title or subsection (c)(3)(C) of this section before the date of publication of such summary in the Federal Register, such summary may be furnished not later than 5 days after it is so published rather than at the time required under such provisions.

15 U.S.C. § 2804.

*which explicitly incorporates § 2804's notice requirements* by providing that a franchisor may only terminate a franchise if "the notification requirements of section 2804 of this title are met." *Id.* § 2802(b)(1)(A).[9] Hence, the PMPA provides a right of action when a franchisor fails to comply with the notification requirements prior to terminating a franchise because such a failure amounts to a violation of § 2802. We previously have said as much in *Ceraso v. Motiva Enterprises, LLC*, 326 F.3d 303, 314 (2d Cir. 2003) ("In order to effect a valid termination, the franchisor must give the franchisee written notice of termination . . . ."), as has the Supreme Court, in the nonrenewal context, *Mac's Shell Serv.*, 130 S. Ct. at 1263 n.12 (noting that if a franchisor "fail[s] to renew a franchise relationship *without* providing the statutorily required notice . . . . a franchisee would . . . have a surefire claim for unlawful nonrenewal" (emphasis in original)). We also have emphasized that "[t]here must be strict compliance with the notice provisions of the PMPA." *Ceraso*, 326 F.3d at 314 (internal quotation marks omitted).

Lehigh further claims that, even if a right of action exists to enforce the notification provisions with respect to a full franchise, there is no right of action for failure to comply with the notification provisions with respect to a *trial* franchise. Although we have not previously had an opportunity to address this precise question, Lehigh's contention finds no support in the text of the PMPA.

Section 2803 governs trial franchises. It exempts franchisors who *fail to renew* trial franchises from complying with the requirements of § 2802 because, unlike full franchises, trial franchises may

---

[9] Section 2802(b)(1)(A) also requires that § 2804's notification requirements be followed prior to a nonrenewal, which is "a failure to reinstate, continue, or extend the franchise relationship—(A) at the conclusion of the term, or on the expiration date, stated in the relevant franchise; (B) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date; or (C) following a termination (on or after June 19, 1978) of the relevant franchise which was entered into prior to June 19, 1978, and has not been renewed after such date," 15 U.S.C. § 2801(14) (bolding and spacing omitted).

be nonrenewed for any reason.[10]  15 U.S.C. § 2803(a)(1), (c)(1); *see also Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849, 852 (11th Cir. 1997); *Razavi v. Amoco Oil Co.*, 41 F.3d 1549, 1550 (D.C. Cir. 1994).  However, franchisors must still comply with the notice provisions of § 2804 before nonrenewing a trial franchise because § 2803 explicitly incorporates its requirements: "[i]f the notification requirements of section 2804 of this title are met, any franchisor may fail to renew any franchise relationship– (1) under any trial franchise . . . ."  15 U.S.C. § 2803(c)(1); *see also Shukla*, 115 F.3d at 852; *Razavi*, 41 F.3d at 1550.

Nevertheless, Section 2803 does not exempt franchisors who *terminate*[11] trial franchises from complying with the requirements of § 2802.  *See* 15 U.S.C. § 2803(a)(1) ("The provisions of section 2802 of this title shall apply to the *nonrenewal* of any franchise relationship– (1) under a trial franchise." (emphasis supplied)).  As a result, the requirements of § 2802 prohibiting franchisors from "terminat[ing] any franchise," *id.* § 2802(a)(1), without complying with the notice requirements of § 2804, *id.* § 2802(b)(1)(A), apply to the termination of trial franchises.[12]

---

[10] Under § 2802, a franchisor may only terminate a franchise or elect not to renew a franchise relationship with proper notice and on the basis of certain grounds, which include (1) failure by the franchisee to comply with a reasonable and materially significant provision of the franchise, (2) failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise, (3) the occurrence of a relevant event that renders termination or nonrenewal reasonable, (4) an agreement to terminate the franchise or not renew the franchise relationship, and (5) a good faith determination by the franchisor to withdraw from the marketing of motor fuel in the area.  15 U.S.C. § 2802(b)(2).

Additionally, upon proper notice, § 2802 permits the nonrenewal of a franchise relationship—but not the termination of a franchise—if (1) the franchisor and franchisee fail to agree on new terms proposed in good faith, (2) the franchisor receives numerous bona fide customer complaints concerning the franchisee which the franchisee does not promptly correct, (3) the franchisee fails to operate the premises in a clean, safe, and healthful manner, or (4) the franchisor makes a good faith determination in the normal course of business to convert the premises to another use, materially alter the premises, or sell the premises, or that the franchise relationship is likely to be uneconomical despite reasonable changes to the relationship.  *Id.* § 2802(b)(3).  As noted above, franchisors are exempted from the *nonrenewal* requirements as to trial franchises.  *Id.* § 2803(a).  The clear purpose of exempting trial franchises from these provisions is to allow franchisors the freedom to decide not to renew the franchise relationship after the trial period.

[11] As noted above, *see* notes 6 and 9, *ante*, the terms "terminate" and "nonrenewal" are defined differently under the Act.  Generally, "terminate" refers to annulling a franchise during its contract, *see Mac's Shell Serv.*, 130 S. Ct. at 1257, whereas "nonrenewal" refers to declining to extend a franchise relationship at the conclusion of the franchise's term, *see* 15 U.S.C. § 2801(14).

[12] Lehigh refers us to an opinion of the Court of Appeals for the Tenth Circuit, which states that "[t]he provisions of the PMPA that expressly restrict the ability of franchisors to terminate or fail to renew, 15 U.S.C. § 2802(b), do not apply to trial franchises."  *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1435 (10th Cir. 1987).  As *Ewing* evaluated a nonrenewal, rather than a termination, of a trial franchise, this statement was *dicta*.  Because the clear text of

Both the structure and purpose of the PMPA reinforce our conclusion that the termination provisions—including the notice requirement—of § 2802 apply to trial franchises, even though the nonrenewal provisions of § 2802 do not. Under Lehigh's reading of the PMPA, a franchisor need not provide notice before terminating a franchise (the more sudden event), but must provide notice before failing to renew one (the less sudden event). That interpretation is not only illogical, but runs counter to the articulated purposes of the statutory scheme, *see Holloway*, 526 U.S. at 6, because Lehigh's reading would provide an incentive for franchisors to skirt the notice requirements by terminating the franchise early and without notice—a result that would undermine "strict compliance with the notice provisions of the PMPA," *Ceraso*, 326 F.3d at 314, and encourage arbitrary and unfair terminations, *Mac's Shell Serv.*, 130 S. Ct. at 1255; *Mobil Oil Corp.*, 879 F.2d at 1055.

Instead, we recognize the coherent and reasonable structure built by the clear text of the PMPA, and understand that a "trial franchise" is just that: a trial. Under a trial franchise relationship, the franchisee is guaranteed a trial period, during which it is free from arbitrary or sudden termination. *See* 15 U.S.C. § 2802(a), (b). At the conclusion of the trial period, however, upon proper notice, the franchisor may conclude that the experiment has failed and elect not to renew the relationship. *See id.* § 2803. The plain language of the statute articulates this framework, and we must therefore enforce it. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) ("The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (internal quotation marks omitted)).

---

the Act does not support the interpretation of the *Ewing* court, we see no reason to follow this non-binding and, in any case, unpersuasive statement.

In sum, we hold that a trial franchisee does have a right of action, under § 2805, against a franchisor that terminates its franchise without proper notice. Accordingly, we conclude that the District Court properly granted summary judgment in favor of plaintiffs.

## B. Damages, Fees, and Costs

Lehigh also challenges the District Court's award of compensatory and punitive damages, attorney's fees and costs, and pre- and post-judgment interest, pursuant to § 2805.[13] Lehigh concedes that the District Court made no legal error as to the damages award, Appellant Br. 36 (stating that "the District Court made all the appropriate findings"), and so we only review its factual determinations for clear error, *Serricchio*, 658 F.3d at 191.

After reviewing the record, we find no clear error in the District Court's well-reasoned damages analysis. Furthermore, we find no error in the District Court's punitive damages award based on its finding of willful disregard of the PMPA's requirements, pursuant to § 2805(1)(B), and no abuse of discretion in the District Court's award of attorney's fees and costs and pre- and post-judgment interest, *see Barbour*, 700 F.3d at 634; *see also In re Sims*, 534 F.3d at 132.

---

[13] In full, § 2805(d) provides:

Actual and exemplary damages and attorney and expert witness fees to franchisee; determination by court of right to exemplary damages and amount; attorney and expert witness fees to franchisor for frivolous actions

**(1)** If the franchisee prevails in any action under subsection (a) of this section, such franchisee shall be entitled—

    **(A)** consistent with the Federal Rules of Civil Procedure, to actual damages;

    **(B)** in the case of any such action which is based upon conduct of the franchisor which was in willful disregard of the requirements of section 2802, 2803, or 2807 of this title, or the rights of the franchisee thereunder, to exemplary damages, where appropriate; and

    **(C)** to reasonable attorney and expert witness fees to be paid by the franchisor, unless the court determines that only nominal damages are to be awarded to such franchisee, in which case the court, in its discretion, need not direct that such fees be paid by the franchisor.

**(2)** The question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by a jury.

**(3)** In any action under subsection (a) of this section, the court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the franchisee if the court finds that such action is frivolous.

15 U.S.C. § 2805(d).

Finally, plaintiffs request attorney's fees and costs for defending this appeal. Under the PMPA, a prevailing franchisee is entitled "to reasonable attorney and expert witness fees . . . unless the court determines that only nominal damages are to be awarded to such franchisee, in which case the court, in its discretion, need not direct that such fees be paid by the franchisor." 15 U.S.C. § 2805(d)(1)(C); *see also Mac's Shell Serv.*, 130 S. Ct. at 1260 n.7 ("The Act *requires* courts to award attorney's fees and expert-witness fees in any case in which a plaintiff recovers more than nominal damages." (emphasis in original)). Inasmuch as plaintiffs have prevailed in this action and have been awarded more than nominal damages, they are entitled to fees for defending this appeal, in an amount to be determined on remand by the District Court. We emphasize that plaintiffs are entitled only to *reasonable* fees. 15 U.S.C. § 2805(d)(1)(C).

**CONCLUSION**

To summarize:

(1)    A trial franchisee has a right of action under the PMPA against a franchisor that terminates its franchise without proper notice. *See* 15 U.S.C. §§ 2802(b)(1)(A), 2803, 2804, 2805(a).

(2)    The District Court did not abuse its discretion or otherwise err in awarding compensatory and punitive damages, attorney's fees and costs, and pre-and post-judgment interest, for Lehigh's violation of the PMPA.

(3)    Plaintiffs are entitled to reasonable attorney's fees for defending this appeal. *See id.* § 2805(d)(1)(C).

The amended judgment of the District Court is **AFFIRMED** and the cause is **REMANDED** for adjudication of appellate attorney's fees.

13